599 So.2d 350 (1992)
Deborah W. GERMANY
v.
Charles E. GERMANY.
No. 91 CA 1719.
Court of Appeal of Louisiana, First Circuit.
April 10, 1992.
Scott M. Perrilloux, Hammond, for plaintiff.
Lila T. Hogan, Hammond, for defendant.
Before SHORTESS, LANIER and CRAIN, JJ.
SHORTESS, Judge.
The Germanys were married on November 27, 1984, and established their domicile in Tangipahoa Parish, Louisiana. One child, who was four years old at the time of *351 the hearing pertinent in this appeal, was born to the marriage.
The parties legally separated, and a joint custody plan was agreed to which designated Deborah West Germany (plaintiff) as domiciliary parent, subject to Charles E. Germany's (defendant) visitation rights.
Defendant then lost one rule to change custody. He filed another on October 17, 1989, and obtained an ex parte order granting him temporary sole custody. After a hearing,[1] the trial court changed custody and ordered a joint custody plan which designated defendant the domiciliary parent, subject to visitation by plaintiff "restricted and limited under circumstances that would protect" the child's safety. Plaintiff has appealed the custody judgment.
Defendant then moved to have plaintiff pay him a percentage of the child's medical and dental expenses and child support. The parties submitted the child support issue on a stipulation of facts and financial statements, and the trial court rendered judgment decreeing that plaintiff shall not pay child support to defendant. Defendant has appealed that ruling.[2]

CUSTODY:
Charles William Germany (William), born February 1, 1985, lived with his mother (plaintiff) and Bruce Chapman, his stepfather, in Mobile, Alabama. On October 19, 1989, Chapman administered a "spanking" to William's bare buttocks after plaintiff's mother, Ledora West, reported that William had misbehaved by screaming and yelling while she had him. Chapman admitted taking William to the bedroom where he put William across his knees, pulled down his pants, and gave him five "licks on his rear end" with his hand.
The next day defendant's parents, Trudy and Peter Germany, arrived at the Chapman residence to get William for weekend visitation. It was then learned that William had abrasions on his buttocks. The Germanys immediately took William to Dr. George W. Hall, a pediatrician in Mobile.
Dr. Hall appeared by deposition and testified that William was an intermittent patient of his since birth; that William's grandparents brought William in on October 20, 1989, with complaints that the child was bruised on both buttocks; that William told him he had been spanked by his father; that his examination revealed fresh bruising and petechiae (small broken blood vessels); that he thought the cause was from a spanking with a paddle; that he considered it to be an overzealous use of a paddle on that age child; and that he reported the incident to the appropriate Alabama state authorities.
The next day, October 21, William was seen by his Hammond pediatrician, Dr. Roger Rholden, who also had treated him intermittently since birth. After examining William's backside he suspected he had been beaten within a day or so. He identified the photographs in evidence as depicting what he saw on October 21. Rholden felt the linear extensions of the abrasions suggest a type of straight object had been used like fingers or possibly a paddle, but they were not wide enough for a belt. Rholden said William told him his stepfather had done it. Rholden also considered this to be child abuse and signed an affidavit.
Plaintiff testified that she had never whipped or slapped her son and that she had never agreed Chapman could use corporeal punishment. She further testified whether William was spanked depended upon what the child had done. She denied that Chapman had a bad temper and said he did not do to William what was shown on the photographs (and she would not stay with him if he did).
Chapman testified that he spanked William with his hand after his mother-in-law said William had misbehaved; that William cried a little but apologized for his behavior; that it did not appear to hurt him; that he went back to playing; that he did not *352 use a paddle; that he did not consider it wrong or improper to spank William; and that he would continue to spank William if he felt he needed a spanking.
The remaining witnesses were defendant's father, mother, and brother-in-law. They testified about Chapman's hot temper, a prior incident in church where Chapman slapped William on the leg, and an alleged statement that he did not like children. Chapman denied all these facts when he testified.
Upon completion of the evidence, the trial court with oral reasons found William had been abused and changed custody from plaintiff to defendant. His reasons state:
I don't need any argument because I feel that the photographs and the testimony of Dr. [Rholden] and the deposition of Dr. Hall clearly prove to me that there was abuse of this child by excessive use of force and that it's tied in with such a con[n]exity to the time it's obvious that it happened at the time the child was in the custody of the mother and as a result of the spanking administered to the child by the mother's present husband. I feel it's excessive use of force. I'm concerned with the statement of the father that he didn't consider it wrong for him to spank the child. If anybody looked at those pictures, I don't see how you would come to any conclusion other than that. It is abuse. And based on that I am going to change the custody to the father and I am going to allow limited visitation by the mother under such circumstances that we can see that this doesn't happen again.
Plaintiff objected to the court's ruling and changing custody based only upon its finding of abuse and without taking additional evidence as it relates to "the best interest of the child." In regard to this argument, the trial court in its reasons for denying plaintiff's motion for new trial said:
After the January 4, 1990 hearing, this court, in an effort to stop time-consuming, unnecessary testimony being elicited by the mover told mover's attorney, Lila Tritico Hogan, to limit the evidence at the next hearing to the abuse issue. The court stated that if Charles Germany could prove the child abuse, that would be enough to warrant a change in domiciliary custody. Testimony on the mover's other allegations would be unnecessary. If mover could not prove child abuse, this court would then allow mover to present evidence on the other allegations.
At the beginning of the hearing on March 29, 1990, Charles Germany's attorney reserved Mr. Germany's right to present other non-abuse issues after the abuse hearing. No such reservation was made by Deborah Germany's attorney. After Charles Germany's abuse evidence was presented, Deborah Germany put on her evidence. At the end of that evidence, this court asked the attorney for Deborah Germany if he had anything further to present, and he said "No[."]
At that point, the case was submitted to this court which ruled that the domiciliary custody should be changed to Charles Germany based upon the proven child abuse committed on William by his [stepfather], Bruce Chapman, in the mother's presence.
It was and still is this court's opinion that the evidence of child abuse was very strong and this court could not return the child to the mother's environment. The mother did not in any of her pleadings or in any manner raise an issue of the father being an unsuitable placement for the child.
Therefore, the Motion for New Trial is denied. If there is now an allegation that circumstances have changed since the hearing date, then the proper remedy is a new Rule to Show Cause why the domiciliary custody should not be changed.
An intermediate appellate court may not substitute its judgment for the trial court's, whose decision must be accorded great weight. Based on our review of this record, we cannot say that the trial court committed manifest error in finding child abuse; nor did it abuse its discretion when it changed the domiciliary parent from *353 Deborah W. Germany to Charles E. Germany, and we affirm its custody judgment. Bergeron v. Bergeron, 492 So.2d 1193 (La. 1986); Jackson v. Jackson, 573 So.2d 217 (La.App. 1st Cir.1990).

CHILD SUPPORT:
The parties stipulated as to the gross incomes of defendant, his current wife, and Chapman. They also stipulated that plaintiff is unemployed but has an earning capacity of minimum wage; that plaintiff is caring for an infant born of her marriage to Chapman; that she has custody of a child of her first marriage; that defendant's current wife has custody of a child of her first marriage; and that defendant and his current wife have an infant son.
The trial court refused to award child support to defendant. In brief oral reasons, the court stated:
It's the Court's ruling that it would not order the mother to pay child support at the present time due to the fact that she is unemployed and she has a child under five, and I do not think that it would be appropriate for the Court to impute the income to her under those circumstances. Further that I'm not going to base her ability to pay child support on income made by the second husband. I feel that income of the second husband is certainly relevant and should be considered by the Court in determining payment of living expenses of the mother and her husband, but I don't think it should be an obligation of him to pay child support which is due solely by the mother.
Defendant contends the trial court should have applied the guidelines set forth in LSA-R.S. 9:315-315.14 and awarded child support to him. In particular, he contends that the trial court erroneously applied R.S. 9:315.9 and that the trial court abused its discretion by not considering Chapman's income.
Those guidelines apply to all proceedings to establish or modify child support filed on or after October 1, 1989. R.S. 9:315.1(A) provides a rebuttable presumption that the amount of child support obtained by use of the guidelines is proper. The court may deviate from the guidelines if it would not be in the child's best interest or would be inequitable, but if the court does so, it must give oral or written reasons for the deviation. R.S. 9:315.1(B). The court's considerations in determining whether to deviate from the guidelines include the "legal obligation of a party to support dependents who are not the subject of the action before the court and who are in the party's household," R.S. 9:315.1(C)(2), and "[a]ny other consideration which would make application of the guidelines not in the best interest of the child ... or inequitable to the parties," R.S. 9:315.1(C)(7).
To apply the guidelines, the court must determine the amount of the combined gross income of plaintiff and defendant. R.S. 9:315.2(C). Income is defined, in R.S. 9:315(6), as:
(a) Actual gross income of a party, if the party is employed to full capacity; or
(b) Potential income of a party, if the party is voluntarily unemployed or underemployed. A party shall not be deemed voluntarily unemployed or underemployed if he or she is absolutely unemployable or incapable of being employed, or if the unemployment or underemployment results through no fault or neglect of the party.
At the time of this hearing, the court was also permitted, but not required, to consider "the benefits a party derives from remarriage, expense-sharing, or other sources." R.S. 9:315(6)(c).[3] If a party is "voluntarily underemployed," the court must also consider the party's "income earning potential" in determining combined gross income. R.S. 9:315.9. Pursuant to *354 R.S. 9:315.9 and 315(6)(b), a party is not considered voluntarily unemployed if:
1. He is caring for a child of the parties under age five;
2. He is physically or mentally incapacitated;
3. He is absolutely unemployable;
4. He is incapable of being employed; or
5. His unemployment results through no fault or neglect of his own.
After determining the combined gross income, the trial court must calculate the basic child support obligation according to the tables set forth in R.S. 9:315.14. The court must then add to that figure the net child care costs as defined in R.S. 9:315(7) and the cost of health insurance paid on behalf of the child, and may add extraordinary medical expenses, expenses for attending a special school to meet the child's particular educational needs, and the expenses of transporting the child from one parent to the other. R.S. 9:315.3-315.6. The court then calculates each party's share of the total child support obligation by multiplying the party's share of the total child support obligation by his percentage share of the combined adjusted gross income. R.S. 9:315.8(C).
In order to determine whether the trial court erred in failing to award child support to defendant, we must determine whether the trial court should have considered the income earning potential of plaintiff and the incomes of Chapman and defendant's current wife.

Plaintiff's Income Earning Potential
It is impossible to determine from the trial court's reasons whether it applied R.S. 9:315.9 or whether it found plaintiff involuntarily unemployed on some other basis. In either case, the trial court committed legal error. The child born of plaintiff's marriage to Chapman is clearly not a "child of the parties," and R.S. 9:315.9 is thus inapplicable. Furthermore, the stipulated facts do not contain a basis for finding plaintiff's unemployment is involuntary. Since plaintiff has income earning potential, the trial court erred in failing to award child support to defendant absent some equitable reason for deviating from the child support guidelines. The trial court provided no such reasons, and our review of the abbreviated record reveals no equitable basis for relieving plaintiff of the obligation to pay child support. The trial court erred in not considering plaintiff's earning potential.

Income of Current Spouses
Defendant contends the trial court erred in failing to use the incomes of Chapman and defendant's current spouse to calculate the amount of child support. R.S. 9:315(6)(c), as it read at the time of the hearing on the child support issue, provides the court may consider as income the benefits a party derives from remarriage. The word "may" is permissive. Thus, the trial judge has discretion whether to consider this income or not. The standard of review is whether the trial court abused his discretion. Norred v. Norred, 591 So.2d 396 (La.App.2d Cir.1991), writ denied, 592 So.2d 1319 (La.1992); Matherne v. Matherne, 571 So.2d 888, 890 (La.App. 5th Cir. 1990).
In Norred, the court found no abuse of discretion in the trial court's decision to include the new spouses' incomes. In Matherne, the court found an abuse of discretion where the trial court failed to include the income of defendant's second wife, whose salary increased defendant's monthly household income by 38%. In Crockett v. Crockett, 575 So.2d 942 (La. App. 2d Cir.1991), however, the court found no abuse of discretion where the parent from whom child support was sought was unemployed and his new spouse's income was insufficient to meet their family expenses.
After reviewing the facts of this case, including the facts that the monthly expenses of the Chapman family exceed Chapman's gross monthly income and that defendant's current wife's income helps support a child of her first marriage and her newborn, we find no abuse of the *355 court's discretion not to consider the current spouses' incomes.

Calculations
The parties stipulated plaintiff's income earning potential is $667.00 per month and defendant's gross monthly income is $2,275.00. Their combined gross monthly income is thus $2,942.00. Plaintiff's proportionate share of this amount is 22.67%. The basic child support obligation set forth in R.S. 9:315.14 is $454.00.[4] The health insurance premiums incurred on behalf of the child (one-fifth of the total monthly premiums paid by defendant of $130.95) is $26.19. There is no evidence in the record regarding net child care costs, extraordinary medical expenses, expenses for special schooling for particular education needs, or expenses to transport the child from one parent to another. The total child support obligation thus totals $480.19 ($454.00 + $26.19). Plaintiff's share of this amount is $108.86 ($480.19 X 22.67%).

Medical and Dental Expenses
Defendant contends the trial court erred in failing to order plaintiff to pay him a percentage of William's medical and dental expenses which were not reimbursed by insurance. Defendant cites no legal authority for this position, and we have found none. The child support guidelines provide for the inclusion of extraordinary medical expenses of the child in calculating the total child support obligation. Since there is no provision in the guidelines for adding the ordinary medical and dental expenses to the child support obligation, we must presume those expenses are included in the figures set forth in the R.S. 315.14 schedule for support. We thus find no error in the trial court's decision not to award those expenses to defendant.

Conclusion
For the foregoing reasons, the judgment of the trial court designating defendant, Charles E. Germany, the domiciliary parent of Charles William Germany is affirmed. The judgment of the trial court in favor of plaintiff, Deborah W. Germany, denying child support to defendant is reversed. Judgment is hereby rendered on the child support issue against Deborah W. Germany and in favor of Charles E. Germany for the payment of child support of $108.86 per month, payable on the first day of each month, retroactive to the date of filing of the rule for child support, June 28, 1990. All costs of this appeal are taxed to plaintiff.
AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.
LANIER, J., concurs in the result.
NOTES
[1] This hearing was limited by argument of the parties solely to the issue of abuse.
[2] Plaintiff's and defendant's appeals, though from separate judgments, were docketed under one number by this court.
[3] LSA-R.S. 9:315(6)(c) was amended by Acts 1991, No. 854. It now provides:

The court may also consider as income the benefits a party derives from expense-sharing or other sources; however, in determining the benefits of expense-sharing, the court shall not consider the income of another spouse, regardless of the legal regime under which the remarriage exists, except to the extent that such income is used directly to reduce the cost of the party's actual expenses.
[4] LSA-R.S. 9:315.14 was amended by Acts 1991, No. 854, § 1. The amount of the basic child support obligation applicable to this case was not affected by the amendment.