626 So.2d 816 (1993)
Michael Shane WYATT, Plaintiff-Appellee,
v.
Mary Katherine WHITE, Defendant-Appellant.
No. 25179-CA.
Court of Appeal of Louisiana, Second Circuit.
October 27, 1993.
*817 Paul Henry Kidd, Jr., Monroe, for appellee.
Blackwell, Chambliss, Hobbs & Henry by James A. Hobbs, West Monroe, for appellant.
Before LINDSAY, HIGHTOWER and BROWN, JJ.
HIGHTOWER, Judge.
An unwed mother, Katherine White appeals a judgment awarding sole custody of her minor son to his father. For the reasons expressed herein, we affirm.

FACTS
After White and Shane Wyatt dated intimately for a year during high school, the sixteen-year-old girl became pregnant. On December 7, 1987, she delivered a son, Seth Wyatt ("Seth"). Her boyfriend, who never denied procreating the child, arranged to have his name appear as father on the birth certificate.[1] Although the couple discontinued their relationship ten months later, Wyatt subsequently maintained contact with his son.
After graduating from high school and obtaining full-time employment, the young mother purchased a home for herself and Seth. Additionally, the father began contributing child support payments as well as maintaining health insurance on his son. Without court intervention, White and Wyatt reached an agreement concerning care of the youngster. Seth resided regularly with his mother, but spent alternate weekends and occasional holidays with his father. The present custody dispute arose from an allegation that White's current boyfriend, Richard Pace, abused the minor.
On the morning following Thanksgiving Day 1991, Seth's stepmother discovered severe bruises on the boy's buttocks, after transporting him to his father's residence for a weekend visit. Upon suggestion from the local sheriff's department, she soon sought the services of a pediatrician, Dr. Meade O'Boyle. Examination of the child's red-and-blue contusions convinced the physician that the marks had been inflicted in an abusive manner with a flat, blunt object. Indeed, when the doctor asked the boy what had happened to his bottom, he volunteered that Pace had "whipped [him] on [his] butt with a belt."
Wyatt immediately instituted custody proceedings. At the first hearing a few days later, and pending final resolution of the dispute, the parents agreed that the residence of their son would be alternated weekly between the parties. However, a temporary restraining order continued in effect prohibiting Pace from being in Seth's presence.
*818 After additional hearings and examining a home assessment report with an attached investigative summary, both documents having been prepared by the Louisiana Department of Social Services, the district court granted sole custody to the father. A short written opinion, noting the abuse inflicted by Pace and observing that such circumstances had not changed, concluded that the child would be in physical danger if placed in his mother's care. Nevertheless, the trial judge accorded White reasonable visitation rights, to be exercised in her boyfriend's absence. This appeal ensued.

DISCUSSION
Custody disputes between parents of an illegitimate, but formally acknowledged child, are controlled by those legal precepts prevailing in cases involving minors born of a marriage. LSA-C.C. Art. 245 and, by reference, Art. 146.[2] The paramount concern is always the best interest of the child. In the Matter of Anderson, 496 So.2d 568 (La.App. 1st Cir.1986). See also Walker v. Washington, 540 So.2d 1002 (La.App. 2d Cir.1989), utilizing the same standards (now enumerated in LSA-C.C. Art. 131) in a contest between a non-parent and a caring natural father. Further, the two parents stand on equal footing at the outset of the trial, and the court's role is to determine the best interest of the child based on the relative fitness and ability of the competing parties in all respects. See Warren v. Warren, 617 So.2d 545 (La.App. 2d Cir.1993), writ denied, 620 So.2d 846 (La.1993), and authorities cited therein. Consequently, each case must be decided on the basis of its particular facts and circumstances by weighing and balancing those factors favoring and opposing custody for the respective parents. Id.
The trial court determined that Seth had two loving parents, each seeking under their own circumstances to provide the best possible living arrangement for the child. Testimony demonstrated that White accorded shelter, food, and nurturing for her son. Soon after graduating from high school and securing full-time employment at Wal-Mart, she purchased a two-bedroom home under a government program subsidizing her monthly mortgage payments. Additional assistance came through Wyatt's child support contributions and vouchers from the Women and Infant Children's program. Not only did she enroll her son in pre-school classes, but also attended church with him when together on weekends. Certain witnesses called by the father reported instances where the young mother stayed out too late or returned from outings smelling of alcohol; however, she otherwise appeared to be a capable parent.
Even so, the evidence supports a finding that the father can provide the minor a seemingly more stable environment. Approximately a year and a half after the boy's birth, Wyatt married another woman and established a household in which his son has been included. Later, this couple had a child of their own. Now living in a trailer near the father's parents and other relatives, they have sought to ensure that Seth feels secure in these surroundings. In addition to his own bedroom, clothes, and toys at this residence, he benefits from having his stepmother and half brother with him during the day while Wyatt works. Here too, similar to the situation at the defendant mother's home, the youngster is afforded the opportunity for pre-school and taken to church on Sunday.
LSA-C.C. Art. 131(C), of course, establishes a rebuttable presumption that a joint custody arrangement will serve a child's best interest. However, consistent with other instances involving rebuttable presumptions, a parent requesting sole custody may prevail upon a proper showing that his proposed resolution is more appropriate. Turner v. Turner, 455 So.2d 1374 (La.1984). Presumptions are never indulged in the face of ascertained and established facts. Id. In the case sub judice, by showing the abuse inflicted upon Seth at the hands of Pace, a man with whom the mother continues her relationship and eventually plans to marry, the father claims to have demonstrated that *819 joint custody would be detrimental. We agree.
The evidence reveals that, on Thanksgiving Day 1991, Pace made one of his regular visits to the White home. The mother, in trying to teach her son to go to sleep without her assistance, sent the youngster to bed that night and instructed him not to leave his room. She subsequently heard sounds indicating, and later confirmed, that her boyfriend had spanked Seth. Although discerning whimpers originating in the child's bedroom, she reported that he did not cry audibly. Upon questioning her male visitor, to whom she had previously given permission to discipline the child, White learned that the punishment stemmed from Seth's refusal to remain in his room.
Pace did not testify at the custody hearing, but made a statement to the social worker conducting the court-ordered investigation. During that interview, the boyfriend disclosed spanking Seth four times on Thanksgiving evening, on each occasion giving the boy four hard "licks" to the buttocks with a belt. He further admitted having whipped the youth in other instances. Indeed, Wyatt testified about seeing other, less severe, bruises on his child even before this event.
As previously stated, Wyatt's wife discovered the contusions on her stepson's buttocks. Photographs taken soon thereafter reveal multiple deep discolorations.[3] When questioned, the young child related to the family that Pace had whipped him with a belt. The stepmother immediately contacted the sheriff who came to the trailer house, observed the marks, and suggested that she call Dr. O'Boyle.
This expert in pediatric medicine, an area including child abuse studies, examined Seth on the Saturday following the Thursday evening incident. Detecting multiple bruises in the red-and-blue stage, the physician concluded the marks had been produced by a flat, blunt object used on at least two different occasions.
Offering another explanation for his grandson's injuries, the mother's father also testified at the custody hearing. He stated that, on the day before Thanksgiving, he and Seth visited his boathouse. According to the grandfather, the child fell while playing on the watercraft stored there, striking the left side of his bottom on the boat trailer. Dr. O'Boyle, however, emphatically rejected such an incident as accounting for the injuries in question.
Apparently, the lower court found itself strongly influenced by two factors: Pace's physical abuse of Seth as revealed by both testimony and the court-ordered investigation; and White's stated intent to continue her relationship with this individual and to marry him within three years. Considering these disclosures, the district judge concluded that the child's best interest would be served through removal from such danger and by placing him in the sole custody of his father.
In a child custody case, the determination of the trial judge will not be disturbed absent a clear showing of abuse of discretion. Draper v. Draper, 556 So.2d 210 (La.App. 2d Cir.1990). An appellate court is required to extend great weight to the factual conclusions of trial courts which are based on reasonable evaluations of credibility and reasonable inferences of fact. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Draper, supra.
Our examination of the record reveals ample support for the finding that the mother's boyfriend physically abused Seth. As explained by Dr. O'Boyle, the discovered bruises did not emanate from a routine spanking, but rather had been caused by severe multiple lashings with a flat, blunt object. We are not favorably impressed with either Pace's admission that he whipped the child on four separate occasions that Thanksgiving evening, or with White's desire to continue her relationship with this individual. In our view, such conditions adequately warrant placement of the child with his father. Cf. Germany v. Germany, 599 So.2d 350 (La. App. 1st Cir.1992), affirming a trial court's decision to remove a child from his mother's *820 custody upon a demonstration that the stepfather abusively spanked the child's bottom leaving multiple bruises.

CONCLUSION
Accordingly, for the foregoing reasons, the judgment of the trial court is affirmed at appellant's costs.
AFFIRMED.
NOTES
[1] In his appellate brief, Wyatt claims to have formally acknowledged the child. Although the record does not establish that fact with irrefutable clarity, White apparently does not dispute this contention.

Moreover, according to LSA-R.S. 40:34(B), which describes the requisite contents of a birth certificate when the father is known and when the mother provides her consent, the surname of the child shall be that of the "natural father." That term is further defined within the statute as "a father whose child has been legitimated ... by notarial act, or a father who has formally acknowledged his illegitimate child."
[2] Pursuant to marriage dissolution revisions effective January 1, 1991, LSA-C.C. Art. 146 has been redesignated as LSA-C.C. Art. 131.
[3] We note that the pictures entered into evidence, unlike the cold transcription of the testimony, depict with startling reality the severity of the whippings.