635 So.2d 456 (1994)
Mary Colquitt SETTLE, Plaintiff-Appellee,
v.
John Edward SETTLE, Jr., Defendant-Appellant.
No. 25643-CA.
Court of Appeal of Louisiana, Second Circuit.
March 30, 1994.
Rehearing Denied April 28, 1994.
*458 James E. Franklin, Jr., Shreveport, for defendant-appellant.
Wiener, Weiss, Madison & Howell, by Katherine Clark Hennessey, Shreveport, for plaintiff-appellee.
Before SEXTON, LINDSAY and VICTORY, JJ.
LINDSAY, Judge.
The plaintiff-in-rule, John Edward Settle, Jr., appeals from a trial court judgment concerning his obligations to pay permanent alimony and child support to his former wife, Mary Colquitt Settle. For the reasons assigned below, we affirm the judgment of the trial court.

FACTS
The parties were married in 1981. Of this marriage, two children were born: Emily Lauren Settle (DOB 3/3/87) and Robert Colquitt Settle (DOB 7/26/88). The couple separated in late March or early April of 1992.
On April 16, 1992, Mrs. Settle filed suit for divorce under LSA-C.C. Art. 102 and sought custody of the children. On May 26, 1992, she amended her petition to seek a divorce on grounds of adultery pursuant to LSA-C.C. Art. 103(2). In her amended petition, she requested permanent alimony. In his answer to the suit for divorce, Mr. Settle sought joint custody of the children.
A five-day trial was held in late May and early June of 1992. On June 5, 1992, the trial court issued written reasons for judgment wherein it granted a divorce in Mrs. Settle's favor based upon her husband's adultery. The parties stipulated that Mrs. Settle was free from fault in the dissolution of the marriage. The trial court awarded Mrs. Settle permanent alimony of $1,000.00 per month. As an additional alimentary obligation, Mr. Settle was ordered to pay the first and second mortgages on the family home, where Mrs. Settle and the children were residing. The court directed that Mrs. Settle inform Mr. Settle when she obtained employment.
The trial court also awarded Mrs. Settle sole custody of the children. Due to Mr. Settle's emotional problems and alcohol abuse, the court allowed him only restricted visitation rights. On the issue of child support, the court found that Mr. Settle's average gross monthly income was $10,830.59. As Mrs. Settle was caring for a child under the age of five, no income was imputed to her under LSA-R.S. 9:315.9. Utilizing the child support guidelines, the court awarded monthly child support in the amount of $1,781.00. Mr. Settle was ordered to carry medical insurance on the children and to pay any medical expenses not covered by insurance (which are hereinafter referred to as "noncovered medical expenses.") He was further ordered to pay the expenses and tuition associated with the children's attendance at St. Mark's Cathedral School. A judgment in conformity with the trial court's ruling was signed on August 14, 1992.
On June 10, 1992, Mr. Settle filed Chapter 7 bankruptcy proceedings. According to his pleadings, he was discharged by the bankruptcy court on September 22, 1992.
On September 2, 1992, Mrs. Settle filed a rule for contempt, due to Mr. Settle's tardiness in making his September child support and alimony payments. She also alleged that *459 he was more than $11,000 in arrears in paying the mortgages on the family home. At a hearing on September 28, 1992, Mr. Settle stipulated his failure to pay; he was held in contempt and sentenced to serve 30 days in jail over 15 consecutive weekends. The trial court also rendered judgment on the arrearages in the amount of $12,096.00, plus late fees and reasonable attorney fees.
Thereafter, Mr. Settle initiated numerous legal proceedings in both the trial court and the bankruptcy court to avoid serving his jail sentence. Among other things, he argued that the automatic stay order in the bankruptcy proceedings precluded the trial court from taking action against him and that the trial court judgment ordering him to pay the house notes was superceded by the bankruptcy proceedings. On October 27, 1992, Mr. Settle filed a motion in the bankruptcy court to convert his Chapter 7 proceedings into Chapter 13 proceedings; two days later, on October 29, 1992, he instituted Chapter 13 proceedings.
In the meantime, on September 25, 1992, Mr. Settle filed the present rule in which he sought termination or reduction of the permanent alimony, reduction in child support, and increased visitation. Subsequently, on two occasions, he amended the rule to additionally seek termination of his obligation to pay the children's private school tuition and noncovered medical expenses.
On or about November 3, 1992, Mr. Settle initiated adversary proceedings in the bankruptcy court against Mrs. Settle and the trial court judge in which he sought to enjoin execution of the jail sentence. On November 6, 1992, the bankruptcy court granted a temporary restraining order in Mr. Settle's favor, but it vacated that order and denied his motion for a preliminary injunction on November 10, 1992.
On November 12, 1992, the trial court issued an ex parte order staying all proceedings in the state court case until such time as the bankruptcy proceedings concluded or the bankruptcy court granted relief from its stay order.
On November 20, 1992, the bankruptcy court issued a "consent order of adequate protection" in which it found that Mrs. Settle had a valid claim of $13,000.00 against Mr. Settle for past due support; Mr. Settle was ordered to pay this amount in 36 consecutive monthly installments of $419.49. The order also made various provisions concerning Mr. Settle's visitation with the children. The order further stated that the automatic bankruptcy stay did not apply to the domestic relations proceedings in state court except for the obligation for past due support; the order provided that, to the extent the automatic stay applied, it was terminated as to all matters in the state court proceedings. On November 25, 1992, an addendum to the consent order was signed; it provided for additional visitation and payment of the private school tuition by Mr. Settle through the end of 1992-93 school year.
Thereafter, Mrs. Settle filed a motion in the trial court to vacate Mr. Settle's sentence due to their agreement whereby he would pay off the arrearages. On December 1, 1992, the trial court vacated the sentence.
On December 4, 1992, the trial court issued an order in which it referred to the bankruptcy court's acknowledgment of the state court's jurisdiction over domestic matters. The order provided that the portions of the bankruptcy orders attempting to adjudicate such issues as visitation would not be enforced due to the bankruptcy court's lack of jurisdiction. On January 22, 1993, the bankruptcy court judge signed an order verifying that the state court could proceed on the pending rule in the domestic case.
In mid-March, 1993, trial was held on Mr. Settle's rule to reduce child support, increase visitation, and reduce or terminate permanent alimony. The trial court issued written reasons for judgment on March 19, 1993. The trial court refused to increase Mr. Settle's visitation with the children. Mr. Settle did not appeal from this portion of the trial court judgment.
On the issue of child support, the court found that Mr. Settle's average monthly income was $6,098.03. It further found that Mrs. Settle's monthly income as a parttime teacher at St. Mark's Cathedral School was $1,291.67. Although Mrs. Settle had been briefly employed by the Caddo Parish school *460 system at a higher salary, the trial court found that Mrs. Settle's reason for changing her employment (to work at the school attended by her children) was to resolve significant transportation problems, not to defeat Mr. Settle's rule to reduce child support and/or alimony. The court also refused to impute a higher salary to Mrs. Settle because she was caring for a child under five years of age, under LSA-R.S. 9:315.9.
Consequently, the trial court calculated the basic child support as $1,416.00, then added $71.54 for the children's health insurance premiums, for a total obligation of $1,487.54. The court ordered Mr. Settle to pay 82.5% of this sum, minus the payment of the children's health insurance premiums, or $1,155.68.
The trial court also ordered Mr. Settle to pay for 82.5% of the children's noncovered medical expenses. It also ordered Mr. Settle to pay 82.5% of the expenses associated with the children attending private school.
On the issue of Mrs. Settle's permanent alimony, the court reduced it to $337.43 per month. Instead of making the various modifications retroactive to the date the rule was filed, the trial court made them retroactive to January 22, 1993, the date that Mr. Settle obtained an order from the bankruptcy court allowing the state court proceedings to go forward.
Mr. Settle's appeal from the trial court judgment is based upon several grounds. His assignments of error are as follows: (1) the trial court erred in not terminating Mrs. Settle's post-divorce alimony; (2) the trial court erred in not imputing a higher income to Mrs. Settle; (3) the trial court erred in failing to include in Mrs. Settle's income the monthly payments of $419.45 which Mr. Settle was ordered to make to her by the bankruptcy court for alimentary arrearages; (4) the trial court erred in not considering that Mrs. Settle had $6,000 in cash when deciding whether to terminate or reduce alimony; (5) the trial court erred in making an inadequate reduction in his child support obligation; (6) the trial court erred in holding that Mr. Settle's gross monthly income was $6,098.03; (7) the trial court erred in requiring Mr. Settle to pay 82.5% of his children's noncovered medical expenses; (8) the trial court erred in ordering Mr. Settle to pay 82.5% of his children's private school tuition and expenses; and (9) the trial court erred in refusing to make the modifications in child support and alimony retroactive to the date of filing of the rule to reduce.

PERMANENT ALIMONY

Wife's Continuing Need for Alimony
Mr. Settle contends that the trial court erred in finding that Mrs. Settle was entitled to receive any award of permanent alimony. He argues that the court should have terminated the alimony award or reduced it to an even lower amount.
Permanent alimony is awarded to a former spouse in need, and it is limited to an amount sufficient for the former spouse's maintenance. Maintenance includes food, shelter, clothing, transportation, medical and drug expenses, utilities, household maintenance, and income tax liability generated by alimony payments. Green v. Green, 567 So.2d 139 (La.App. 2d Cir.1990). Factors to consider in determining the amount of alimony to be awarded include the income, means and assets of the spouses, the liquidity of the assets, the financial obligations of the spouses, including their earning capacity, the health and age of the parties and any other circumstances deemed relevant by the court. Green, supra.
The trial court is vested with great discretion in making alimony determinations, and its judgment will not be disturbed absent a manifest abuse of discretion. Massingill v. Massingill, 564 So.2d 770 (La.App. 2d Cir. 1990).
Shortly before the birth of her first child, Mrs. Settle, a school teacher, ceased working outside the home. In the fall of 1992, following her divorce, she was hired by the Caddo Parish School Board, teaching French at two different schools. In this job, she earned $1,803.08 per month. However, Mrs. Settle encountered significant difficulties in transporting her children to and from school. In order to remedy these problems, she accepted a "3/4" or parttime teaching position *461 at the same school attended by her children, which was effective in January of 1993. As a result, she began receiving a gross monthly salary of $1,291.67. Testimony at trial disclosed that in the fall of 1993 she would be elevated to a fulltime teaching position with a corresponding pay raise. However, her exact salary was unknown. (Although higher than her current salary, it would be less than $1,658.34, the monthly salary of the highest paid teacher at that school.)
Before Mrs. Settle returned to the work force, the trial court awarded her permanent alimony of $1,000.00 per month. After she secured employment at St. Mark's, the trial court found that she still required alimony because her monthly needs were in the amount of $1,252.91 and her net monthly income was only $915.48. Therefore, the court reduced the monthly alimony payment to $337.43, the difference between her expenses and her net income. (Additionally, Mr. Settle was relieved of his alimentary obligation of paying the house notes.)
As previously noted, the trial court found that Mrs. Settle changed jobs for valid reasons, not to frustrate Mr. Settle's rule to reduce. We agree. The evidence demonstrates that Mrs. Settle was faced with significant problems which she took appropriate and reasonable measures to remedy. However, due to the fact that Mrs. Settle had become employed since the rendition of the original alimony award, a reduction was justified. We find that the trial court made an appropriate reduction.
This assignment of error is without merit.

Arrearage Payments Ordered by Bankruptcy Court
Part of the definition of "gross income" found in LSA-R.S. 9:315(4) is:
(a) The income from any source, including but not limited to ... spousal support received from a preexisting spousal support obligation;
Mr. Settle relies upon the definition of "gross income" as "income from any source" to argue that the arrearage payments he was ordered to pay to Mrs. Settle by the bankruptcy court should be included in the calculation of her monthly gross income. However, Mrs. Settle contends that gross income should include spousal support from a different spouse, not payment of arrearages incurred by a spouse who is a party to the present proceedings.
We agree with Mrs. Settle. Like the trial court, we find that Mr. Settle's contention is contrary to public policy. To allow inclusion of the arrearages would effectively reward the spouse who failed to meet his original alimentary obligation while unfairly penalizing a spouse who has already been forced to go without the prior court-ordered support. Therefore, we decline to consider this sum as part of Mrs. Settle's monthly income for purposes of computing either alimony or child support.
This assignment is without merit.

Cash Assets in Wife's Control
Mr. Settle argues that the trial court should have further reduced or terminated Mrs. Settle's permanent alimony because she had $6,000.00 in cash which constituted "sufficient means" for her support.
A support claimant is not required to deplete assets entirely but may be required to deplete liquid assets to some extent, before being entitled to receive support payments. Osborne v. Osborne, 512 So.2d 645 (La.App. 2d Cir.1987); Grigsby v. Grigsby, 573 So.2d 1309 (La.App. 2d Cir.1991). There cannot be an exact formula or rule for deciding whether and to what extent any depletion of assets is required of a support claimant. Courts must apply a "rule of reasonableness" in light of such factors as the value and liquidity of the assets; the ages and the mental and physical health of the parties; their other financial responsibilities; their relative ability, education and work experience; and the potential effect of asset depletion on the children of the marriage. Osborne, supra; Grigsby, supra.
The evidence reveals that at the time of trial Mrs. Settle owed about $3,350.00 on credit cards and that she and the children were facing imminent eviction from their home due to foreclosure proceedings. In *462 view of these factors, the $6,000.00 in cash did not constitute "sufficient means" justifying termination or further reduction of Mrs. Settle's permanent alimony.
This assignment of error is meritless.

CHILD SUPPORT

Father's Gross Monthly Income
LSA-R.S. 9:315(4) defines "gross income" as follows:
(a) The income from any source, including but not limited to salaries, wages, commissions, bonuses, dividends, severance pay, pensions, interest, trust income, annuities, capital gains, social security benefits, worker's compensation benefits, unemployment insurance benefits, disability insurance benefits, and spousal support received from a preexisting spousal support obligation;
(b) Expense reimbursement or in-kind payments received by a parent in the course of employment, self-employment, or operation of a business, if the reimbursements or payments are significant and reduce the parent's personal living expenses. Such payments include but are not limited to a company car, free housing, or reimbursed meals; and
(c) Gross receipts minus ordinary and necessary expenses required to produce income, for purposes of income from self-employment, rent, royalties, proprietorship of a business, or joint ownership or a partnership or closely held corporation. "Ordinary and necessary expenses" shall not include amounts allowable by the Internal Revenue Service for the accelerated component of depreciation expenses or investment tax credits or any other business expenses determined by the court to be inappropriate for determining gross income for purposes of calculating child support.
A parent has a legal obligation to support his children under LSA-C.C. Art. 227. This obligation is not dependent upon how much money is "left over" at the end of the month. Pittman v. Pittman, 418 So.2d 23 (La.App. 1st Cir.1982), writ denied, 423 So.2d 1140 (La.1982).
In the 1992 proceedings, the trial court found that Mr. Settle's average gross monthly income was slightly in excess of $10,000.00. At that time, Mr. Settle was receiving income, equipment rentals, and the use of a house and an automobile from his law corporation and title company. However, he encountered financial problems which resulted in his filing of both Chapter 7 and Chapter 13 bankruptcy proceedings. (The Chapter 7 proceedings were filed only days after the trial court issued its written reasons for judgment setting the original amount of permanent alimony and child support.)
At the hearing on Mr. Settle's rule to reduce, testimony was presented by James Allan Bell, Mr. Settle's CPA. Through schedules and financial statements, Mr. Bell sought to explain the flow of funds between Mr. Settle's various entities (which included his law corporation, his sole practitioner's practice, and two title companies). The trial court accepted the figures set forth on exhibit # P-10, a schedule recapping the monies paid directly to Mr. Settle or for his benefit. This document showed that Mr. Settle's average monthly income for the period of June 1992 through February 1993 was $6,098.03, or a decrease of 44% from the previous figure of $10,830.59.
Mr. Settle's finances are undeniably complicated. Nevertheless, the evidence shows that the amount of his income was established by the testimony of his own accountant as $6,098.03. per month. Although Mr. Settle now complains of the trial court's reliance on the figures provided in # P-10, we note that at trial the parties appeared to accept the accuracy of these figures [R. pp. 1546-1548].
After listening to the testimony of Mr. Settle and his accountant and reviewing the voluminous financial information in the record, the trial court found that the figures on # P-10 were representative of Mr. Settle's income. Based upon our review of the record, we are unable to conclude that the court committed manifest error in this determination.
This assignment of error is without merit.

*463 Mother's Gross Monthly Income

We have previously discussed Mrs. Settle's income as it pertained to her claim for permanent alimony. We now consider it relative to the calculations for child support under the guidelines. Mr. Settle contends that Mrs. Settle is voluntarily underemployed. Consequently, he argues that the trial court erred in not imputing to her the salary she earned as a fulltime teacher for the Caddo Parish school system, instead of the lower salary she earned when she subsequently accepted parttime employment at St. Mark's Cathedral School.
The trial court refused to impute a higher salary to Mrs. Settle because she was caring for a child under five years of age, under LSA-R.S. 9:315.9. In pertinent part, that statute provides:
If a party is voluntarily unemployed or underemployed, child support shall be calculated based on a determination of his or her income earning potential, unless the party is physically or mentally incapacitated, or is caring for a child of the parties under the age of five years.
We agree with the trial court. At the time the rule was tried, Mrs. Settle was caring for the Settles' four-year-old son, Robert. Therefore, the mandatory language in LSA-R.S. 9:315.9 requiring the use of income earning potential is inapplicable.[1]See and compare Palacios v. Palacios, 608 So.2d 243 (La.App. 5th Cir.1992), writ denied, 613 So.2d 1000 (La.1993), and Stowe v. Stowe, 617 So.2d 161 (La.App. 3d Cir.1993).
This assignment of error is meritless.

Children's Noncovered Medical Expenses
Mr. Settle argues that the trial court erred in ordering him to pay 82.5% of the children's noncovered medical expenses. He contends that under Germany v. Germany, 599 So.2d 350 (La.App. 1st Cir.1992), non-covered medical expenses are presumed to be included within the schedule for support set forth in LSA-R.S. 9:315.14.
The trial court specifically rejected the rationale of the Germany case. The court found that it would be "completely inequitable" to require Mrs. Settle to be ultimately responsible for all of the children's future noncovered medical expenses. It further found that it was in the best interest of the children for the parents to participate in the payment of noncovered medical expenses and that such a sharing was consistent with the obligation of the parents under LSA-C.C. Art. 227. To do otherwise might force Mrs. Settle to forego medical treatment for the children on economic grounds. Additionally, the trial court found that there was an evidentiary basis in the record justifying a deviation from the guidelines under LSA-R.S. 9:315.1(B); the evidence demonstrated that the average noncovered expenses for the children for a nine-month period was $137.58 per month.
In Hutto v. Kneipp, 627 So.2d 802 (La. App. 2d Cir.1993), this court was presented with a similar ruling by the same trial judge based on the identical grounds. We upheld the trial court's ruling in that case, and we likewise affirm the trial court ruling in the present case.
This assignment of error is without merit.

Private School Tuition and Expenses
Mr. Settle contends that, in view of his financial condition, the trial court erred in ordering him to pay 82.5% of all of the expenses associated with the children attending private school, including tuition, registration fees and After School Enrichment expenses. He maintains that the children have no special needs requiring their attendance at St. Mark's.
LSA-R.S. 9:315.6 provides, in pertinent part:
By agreement of the parties or order of the court, the following expenses incurred on behalf of the child may be added to the basic child support obligation:

*464 (1) Any expenses for attending a special or private elementary or secondary school to meet the particular educational needs of the child. [Emphasis added.]
In its written reasons for judgment, the court noted that the original decision to send the children to St. Mark's was made by the parents jointly. It also found that it was imperative that some degree of stability be maintained in the children's lives since "nearly every other area of their lives has been disrupted over the last year," especially in view of their imminent eviction from the family home as a result of foreclosure proceedings. In support of its decision, the court cited Dempsey v. Stevens, 611 So.2d 815 (La.App. 3d Cir.1992), and Corley v. Corley, 600 So.2d 908 (La.App. 4th Cir.1992).
In Corley, the appellate court upheld the trial court's inclusion of the cost for private school in the child support obligation, finding simply that "[t]he boys had gone to private school for years and the continuation of their education is in their best interests."
Several of the arguments made by Mr. Settle were made by the father in the Dempsey case, i.e., that he could not afford to send his daughter to private school and that private school was elitist and did not expose her to "average people." The appellate court upheld the trial court judgment requiring the father to pay his pro rata share of the private school tuition on the basis that "[i]t cannot be denied that [the child's] successful continuation of her education in a proven academic environment is in her best interest."
In Schulz v. Schulz, 630 So.2d 847 (La. App. 4th Cir.1993), the court noted that LSA-R.S. 9:315.6(1) does not require a finding of "extraordinary" need, "unusual" need or even a "special need," but only a "particular" need of the child. In Schulz, the court upheld the inclusion of private school tuition where the daughter had attended private school all her life and was about to begin her senior year. The father argued that he could not afford to pay for private school. The appellate court acknowledged that the family's financial situation was "difficult." However, it noted that the debt for the tuition loan had already been incurred at the time of trialwith the father's consent. The court also stated:
Moreover, as the legislature recognized by the inclusion of R.S. 9:315.6(1) in the guidelines, making private school education available is a worthy goal.
Also, see and compare Widman v. Widman, 619 So.2d 632 (La.App. 3d Cir.1993), and Jones v. Jones, 628 So.2d 1304 (La.App. 3d Cir.1993), in which inclusion of private school fees were also upheld as being in the best interest of the children.
At oral argument, counsel for Mr. Settle cited Guillory v. Ventre, 610 So.2d 1056 (La. App. 3d Cir.1992), writ denied, 613 So.2d 992 (La.1993). However, we find the present situation to be distinguishable. In Guillory, supra, the court upheld the trial court's exclusion of the child's private school tuition where the record was totally devoid of any evidence to support its inclusion.[2]
The evidence in the present case discloses that the cost for both children to attend private school was $283.75 per month for 12 months. Additionally, the afternoon enrichment program for Robert cost $123 per month and included lunch; Emily's monthly expense for lunch was $23. The court directed that Mr. Settle pay 82.5% of these expenses.
Although Mr. Settle initially testified that he wanted his children to experience the "benefits" of public school, on cross-examination he admitted that his primary objection to private school was economic. Mrs. Settle testified that she felt that, in view of the considerable turmoil in their lives at the present time, the children needed a nurturing, stable school environment. The trial court agreed. We find no error in this determination.[3]
*465 This assignment of error is meritless.

RETROACTIVE DATE OF MODIFICATIONS
Mr. Settle maintains that the trial court erred by failing to make the modifications retroactive to the date the rule to reduce was filed, September 25, 1992.
In its opinion, the trial court ordered that the modifications be retroactive to January 22, 1993, the date that Mr. Settle obtained the order from the bankruptcy court permitting state court proceedings to go forward. Since none of the numerous delays in bringing the rule to reduce to trial could be imputed to Mrs. Settle and her counsel, the court ruled that the parties should share any legal effects resulting from those delays.
LSA-R.S. 9:310 provided, in pertinent part:
A. An order for child support or alimony shall be retroactive to the filing date of the petition for child support or alimony granted in the order.
* * * * * *
C. In the event the court finds good cause for not making the award retroactive, the court may fix the date such award shall become due.[4]
The trial court is vested with much discretion in fixing awards of alimony and child support. Such determinations will not be disturbed unless there is a clear abuse of discretion. Holdsworth v. Holdsworth, 621 So.2d 71 (La.App. 2d Cir.1993).
In the present case, Mr. Settle attempted to involve the bankruptcy court in the state court litigation on several occasions; these efforts led to considerable confusion and additional litigation. Finding no abuse of discretion in the trial court's determination that good cause existed for not making the modifications retroactive to the date the rule was filed, we will not alter the effective date of the award.
This assignment of error is meritless.

CONCLUSION
For the reasons set forth above, the judgment of the trial court is affirmed. Costs are assessed against the appellant, Mr. Settle.
AFFIRMED.
SEXTON, J., concurs with written reasons.
VICTORY, J., dissents in part.
SEXTON, Judge, concurring.
While I join in this opinion in its entirety at this point in time, I write to express reservation over two issues.
With respect to private school tuition, I am persuaded that Mr. Settle, on his current income, can afford that expense. Further, it is clear that he and his wife agreed to this arrangement. It can surely be said that in almost any situation where the parents can afford it, it is in the children's best interest to attend the best possible school, which most likely will be a private one. My concern is the phraseology of R.S. 9:315.6(1), which speaks of "attending a special or private elementary or secondary school to meet the particular educational needs of the child." This wording connotes to me a specific educational need which has not been shown here. I am not aware that this circuit has addressed this particular issue. However, it appears that all of the other circuits have, and the holding here follows the uniform jurisprudence.
I am likewise concerned about the issue of noncovered medical expenses. Our Hutto v. Kneipp, 627 So.2d 802 (La.App. 2d Cir.1993), is in direct contrast with Germany v. Germany, *466 599 So.2d 350 (La.App. 1st Cir.1992). I am not nearly so certain as the trial court that the Germany result is wrong, and that we were correct in Hutto. The fact that the guidelines require known and anticipated medical expenses to be factored in as well as the fact that the guidelines appear to contemplate medical insurance being paid proportionately by the parties seems to me to argue for the Germany result. However, at this time I have decided to follow this circuit's jurisprudence on the issue.
VICTORY, Judge, dissenting in part.
I agree with all parts of the majority opinion except:
(1) In my view, Germany v. Germany, 599 So.2d 350 (La.App. 1st Cir.1992) is correct in holding that ordinary medical and dental expenses which are not covered by insurance are included in the figures set forth in the La.R.S. 9:315.14 schedule for support. Thus, it was error for the trial court to deviate from the guidelines to add expenses already included in the basic child support obligation.
(2) In order to add private school expenses to the basic child support obligation over Mr. Settle's objection, it must be shown that such schooling is needed to "meet the particular educational needs of the child." Under the facts presented here, in which both children are just beginning their education, there are no particular educational needs shown. Unfortunately, in divorce situations children's lives are frequently disrupted and a change of residence is common.
For these reasons, I dissent in part.

APPLICATION FOR REHEARING
Before SEXTON, NORRIS, LINDSAY, VICTORY and BROWN, JJ.
Rehearing denied.
NOTES
[1] At oral argument, counsel for Mr. Settle informed the court that since Robert was no longer under five years of age, a new rule was pending in the trial court on that issue. However, since the child was still under five years of age at the time the present rule was tried, Mrs. Settle was entitled to the benefits of LSA-R.S. 9:315.9.
[2] Like counsel for Mrs. Settle, we find that the Guillory court mischaracterized the facts of the Dempsey case by stating that the mother in Dempsey presented evidence that the private school met the "special educational needs of the child." Our reading of Dempsey, supra, reveals no such facts.
[3] At this point, we find it pertinent to note that, according to our calculations, the total support awards and Mr. Settle's other fixed obligations still leave him with sufficient means of more than $2,000 per month for his own support.
[4] LSA-R.S. 9:310 was amended by Acts 1993, No. 261, to provide for retroactivity of spousal support orders only; the act also added LSA-R.S. 9:315.21, to address retroactivity of child support judgments. However, these amendments do not apply to actions filed before January 1, 1994.