764 So.2d 261 (2000)
Pamela Thomas GIBBS, Plaintiff-Appellee,
v.
Thomas Liner GIBBS, Defendant-Appellant.
No. 33,169-CA.
Court of Appeal of Louisiana, Second Circuit.
June 21, 2000.
*262 Samuel P. Love, Jr., Shreveport, Counsel for Defendant-Appellant.
Stephen L. Harrison, Monroe, Counsel for Horizons Bank.
Jill B. Goudeau, West Monroe, Counsel for Plaintiff-Appellee.
Before GASKINS, CARAWAY and DREW, JJ.
DREW, J.
Thomas Gibbs appeals a judgment sustaining a no cause of action exception to his petition to terminate permanent alimony based upon the alleged fault of his spouse. He also appeals another judgment denying his claim to terminate alimony based upon his allegations that his wife is no longer in need and he is unable to pay alimony.
We affirm the judgments.

FACTS
Pamela Gibbs filed a petition for a La. C.C. art. 102 divorce from Thomas Gibbs on January 4, 1996. By judgment on rule based upon a joint stipulation, Mrs. Gibbs was designated domiciliary parent of their minor child, Larkin Gibbs. Mr. Gibbs was ordered to pay $600 per month in child support and alimony pendente lite of $1,500 per month. On May 22, 1996, Mr. Gibbs filed an answer and reconventional demand in which he sought a divorce under La. C.C. art. 103 on the ground of having lived separate and apart for six months. Mr. Gibbs also alleged in his reconventional demand that Mrs. Gibbs was guilty of fault precluding her from receiving permanent alimony.
On November 21, 1996, both parties appeared in court to make stipulations on the record. Among the stipulations were that Mrs. Gibbs was to receive $500 per month in permanent alimony and $600 per month in child support. On May 16, 1997, Mrs. Gibbs filed a rule to show cause why the Art. 102 divorce should not be granted. Four days later, the court rendered judgment in accordance with the stipulations made by the parties in November. Judgment of divorce was rendered on June 10, 1997. Two days later, the parties entered into a consent judgment relating to the division of the community property. A community property settlement was adopted, attached to the judgment and made part of the record.
On October 30, 1997, Mr. Gibbs filed a rule for a decrease in child support and termination or reduction of alimony due to a change in circumstances. A hearing on this rule was held on April 16, 1998. The *263 trial court denied the rule on May 1, 1998. Mr. Gibbs' motion for new trial was also denied.
On September 29, 1998, Mr. Gibbs filed a petition and rule to show cause alleging that permanent alimony should be terminated because Mrs. Gibbs had never been found free from fault, and that she was guilty of fault in the dissolution of the marriage. Mrs. Gibbs filed the peremptory exception of no cause of action, in which she asserted that Mr. Gibbs waived any right to litigate the issue of fault when he stipulated to permanent alimony.
Mr. Gibbs amended his petition and rule in January 1999 to additionally allege that permanent alimony should be terminated because Mrs. Gibbs is no longer in need of alimony and that he is not financially able to continue paying alimony.
Mr. Gibbs again amended his rule on February 4, 1999, to allege that alimony should be terminated or reduced due to a change in circumstances, namely that Mrs. Gibbs' income had increased and that he had no income since he was unemployed. Mr. Gibbs further alleged that Mrs. Gibbs was no longer in need of alimony.
At a hearing on the issue of fault held on January 20, 1999, the trial court rendered judgment granting Mrs. Gibbs' exception of no cause of action. The pending rule to terminate permanent alimony based upon the financial circumstances of the parties was continued.
Trial was held on the issue of alleged change of circumstances in March 1999. In its written ruling, the trial court found that Mrs. Gibbs was still in need of permanent alimony, but reduced the monthly alimony obligation from $500 to $375 because Mr. Gibbs' ability to pay had diminished somewhat. A judgment reducing alimony but denying the rule to terminate alimony was rendered on March 23, 1999.
Mr. Gibbs appeals the judgments rendered on January 20, 1999 and March 23, 1999.

DISCUSSION

Fault Precluding Alimony
Mr. Gibbs contends in his first assignment of error that the trial court erred in sustaining Mrs. Gibbs' exception of no cause of action to his petition alleging that Mrs. Gibbs was not free from fault. Mr. Gibbs argues that throughout his pleadings, and particularly in his answer and reconventional demand filed on May 22, 1996, he reserved the right to litigate the issue of fault. Mr. Gibbs' reconventional demand stated, in relevant part:
[Mrs. Gibbs] is guilty of pre-separation fault so as to bar her from receiving permanent alimony, and although she is gainfully employed, this pre-separation fault should be determined prior to rendition of a divorce in this matter.
Alternatively, and if the divorce is granted immediately, that the determination of fault be referred to the trial of the partition of community or other trial of the incidental issues.
Plaintiff in Reconvention will request the granting of an immediate divorce under the provisions of law providing that upon the expiration of the mandatory time period the court shall grant the divorce expeditely [sic] reserving to trial other incidental issues that cannot be resolved.
* * * *
Plaintiff in Reconvention further alleges that the alimony obligation should be redetermined in the event [Mrs. Gibbs] is not found to be at fault; accordingly, it is requested that the court redetermine the alimony obligations after the divorce judgment is rendered as provided by law in that a new standard is applicable.
Plaintiff in Reconvention reserves all rights concerning a division of the community and any other incidental issues not asserted in this reconventional demand to be raised by amendment of the pleadings, stipulation, or pre-trial order.
*264 On November 21, 1996, six months after the filing of the reconventional demand, the parties appeared in court with their attorneys. Mr. Gibbs' counsel told the court that by entering stipulations, they were "actually going to be resolving all remaining issues, property and everything...." Mrs. Gibbs' attorney then added that the parties agreed that Mrs. Gibbs was entitled to $500 per month in permanent alimony. Mr. Gibbs' counsel next stated that "[t]his is going to resolve every issue that the parties would currently have with each other or against each other." The trial judge then asked both parties if they understood that "this is the law between you now" and that they couldn't change their minds after leaving the courtroom. Both answered affirmatively.
It is clear from reading the transcript of the November 21, 1996 hearing that the stipulations resolved all remaining issues the parties had raised. Mr. Gibbs had raised the issue of fault as a bar to permanent alimony in his reconventional demand filed six months prior to the stipulation to permanent alimony. Thus, the issue of Mrs. Gibbs' fault was a "remaining" issue at the time of the stipulations, which according to Mr. Gibbs' counsel, was resolved by the stipulations.
Mr. Gibbs also deems it significant that the judgment of divorce stated, in part, that "the right of each party is reserved to bring other actions for settlement of the claims of the spouses arising from the matrimonial regime." Our emphasis. We note that this judgment of divorce further stated that "the provisions of that Judgment on Rule filed on the 20th day of May, 1997, in this proceeding relating to child support and alimony are incorporated herein by reference." Our emphasis. The May 20, 1997 judgment, rendered in accordance with the November 1996 stipulations, declared that Mrs. Gibbs was entitled to receive permanent alimony of $500 per month. Thus, the divorce judgment referred to reservation of actions other than those to determine entitlement to alimony.
Boswell v. Boswell, 501 So.2d 972 (La.App. 2d Cir.1987), is applicable to the facts of this case. In a 1983 divorce judgment, Mrs. Boswell was awarded $650 per month in alimony pursuant to an agreement between the parties. Mr. Boswell filed a rule two years later to terminate alimony, partly on the ground that Mrs. Boswell had never been adjudged to be free from fault. Considering Mr. Boswell's rule an attempt to "collaterally attack" the judgment awarding permanent alimony, the court stated:
This court has already held that when a husband consents to a judgment granting his divorced spouse permanent alimony, or does not appeal from such a judgment, he may not in a subsequent proceeding to terminate or reduce alimony raise the issue of the wife's non-entitlement to alimony by reason of her fault.

Id., 501 So.2d at 974.
Mr. Gibbs is likewise attempting to collaterally attack the judgment awarding alimony which he had previously agreed to pay. This assignment of error is without merit.

Termination of Alimony
In its written ruling relating to the issues of terminating or reducing alimony, the trial court stated, in part:
Subsequent to the original alimony award, the financial position of Mrs. Gibbs has remained essentially unchanged, although some additional income is now derived through second and third jobs, and a modification of the loan on her rent house. The need recognized in the original judgment still exists.
Mr. Gibbs' ability to pay alimony has diminished somewhat since 1996. He has skills in commercial photography and as a petroleum land man. Both of these occupations have provided him with substantial incomes in the past and *265 commercial photography offers this potential for the immediate future.
The Court finds that some, but not all, of Mr. Gibbs' reduced ability to pay alimony is because of his own actions and evasions. However, upon considering all factors, the Court finds that a 25% reduction in Mr. Gibbs' alimony obligation is warranted....
Not satisfied that his monthly alimony obligation was only reduced, Mr. Gibbs argues in his second assignment of error that the trial court erred in denying his rule to terminate alimony. Mr. Gibbs contends that Mrs. Gibbs is no longer in need of alimony and that he is unable to pay alimony.
Permanent alimony is awarded to a former spouse in need and is limited to an amount sufficient for maintenance as opposed to continuing an accustomed style of living. Brewton v. Brewton, 30,134 (La. App.2d Cir.1/21/98), 705 So.2d 799. Maintenance includes food, shelter, clothing, transportation, medical and drug expenses, utilities, household maintenance and income tax liability generated by alimony payments. Settle v. Settle, 25,643 (La. App.2d Cir.3/30/94), 635 So.2d 456, writ denied, 94-1340 (La.9/16/94), 642 So.2d 194. Permanent alimony has not been interpreted to include expenditures for newspapers, gifts, recreation, vacation and church tithes. Faltynowicz v. Faltynowicz, 30,605 (La.App.2d Cir.6/24/98), 715 So.2d 90.
An award of alimony is never final. Gilbreath v. Gilbreath, 32,292 (La. App.2d Cir.9/22/99), 743 So.2d 300. An award of periodic support may be modified if the circumstances of either party change and shall be terminated if it becomes unnecessary. La. C.C. art. 114. See also La. C.C. art. 232, which permits discharge from alimony when "the person who gives or receives alimony is replaced in such a situation that the one can no longer give, or that the other is no longer in need of it...." The party seeking the modification or termination of support carries the burden of proof that circumstances have changed since the original award. Gilbreath v. Gilbreath, supra.
In reducing the amount of alimony, the trial court obviously found that a change in circumstances warranted the reduction. As a result, the burden shifted to Mrs. Gibbs to prove her need for spousal support and the facts mitigating against termination. Nichols v. Nichols, 32,628 (La.App.2d Cir.1/26/00), 750 So.2d 495; Gilbreath v. Gilbreath, supra. The trial court found that Mrs. Gibbs' need recognized in the original judgment still existed. The trial court is given great discretion in making alimony determinations, which will not be disturbed absent a clear abuse of that discretion. Boswell v. Boswell, supra.
Factors to consider in determining whether a former spouse is in need of alimony include her income, means, earning capacity, assets, the liquidity of the assets, her financial obligations, her health and age and any other circumstances deemed relevant by the court. Nichols v. Nichols, supra; Settle v. Settle, supra.
Mrs. Gibbs was 51 years old at the time of the March 1999 hearing. She is employed by the Ouachita Medical Society ("OMS") as a bookkeeper, secretary, office administrator and magazine publisher. Prior to June 1, 1996, she was paid $800 per month. Since that time, she has earned $2,083.33 per month, which equals a gross salary of $25,000 per year. Thus, her salary has remained unchanged since the parties stipulated to permanent alimony in November 1996. Mrs. Gibbs received a raise to her current salary level effective on June 1, 1996. Mrs. Gibbs listed her net pay from OMS as $1,701.95 per month on her affidavit of income and expenses. Mrs. Gibbs also earns $256 per month doing clerical work for Euroboard, assuming she works every Friday. She was not working for Euroboard at the time the parties stipulated to alimony. In 1998, *266 Mrs. Gibbs also earned $300, or $25 per month, doing calligraphy.
Mrs. Gibbs listed rental income of $510 per month on her affidavit of income and expenses. She testified at trial that she had raised the rent to $600 per month since she had signed the affidavit. Mrs. Gibbs listed her total monthly income as $2,492.95. Including the rent increase, this figure should be $2,582.95.
Mrs. Gibbs' most recent bank statement filed into evidence shows a balance of $13,655.22 in her money market account. She testified that this is the only money that she has saved. This amount apparently reflects a lump-sum payment made by Mr. Gibbs for past-due alimony. We note that Mrs. Gibbs' bank records reflect that she deposited over $14,000 for past-due support in her account on February 3, 1999.
Mrs. Gibbs had not prepared her 1998 income tax return at the time of the hearing, so she did not list her tax liability for alimony on her affidavit. However, she testified that she wanted the court to consider her tax liability. In 1996, she paid taxes on $2900 in alimony. In 1997, she paid taxes on $2,375 in alimony.
Mrs. Gibbs clearly demonstrated that she remains in need of permanent alimony. Even excluding those expenses not permitted by law from her affidavit of expenses, her monthly expenses exceed her monthly income. This does not even take into account the potential tax liability she faces for past-due alimony payments that were not reflected in her affidavit. The record supports the trial court's finding that Mrs. Gibbs remains in need.
Mr. Gibbs contends that he is unable to pay alimony. He worked as a commercial photographer in 1995, earning a gross income of $124,000, with a net income of $29,048. He reported a total income of $19,824 on his 1996 income tax return. A Schedule C form attached to the 1996 return shows a gross income of $64,518 from his commercial photography business. A second Schedule C attached to that tax return shows a gross income of $16,685 from employment as a petroleum landman.
Mr. Gibbs worked in 1997 as a land man performing title work for oil companies, earning $175 per day. He also occasionally worked as a commercial photographer on weekends during that year. His 1997 tax return shows a total income of $28,628. A Schedule C form attached to this return shows a gross income of $53,889 as a petroleum landman. Mr. Gibbs testified that he reported no photography income on his 1997 return because there was not any income during that year. However, filed into evidence is a copy of an adding machine tape (Exhibit D-10) showing, in Mr. Gibbs' handwriting, that he billed at least $12,169 for photography work from December 19, 1996 through August 14, 1997. Mr. Gibbs reported a total income of $16,263 on his 1998 income tax return. The Schedule C attached to that return lists a gross income of $39,706 from his work as a photographer/landman.
Mr. Gibbs stopped working full-time in July 1998 when his job as a landman ended. Having married in July, Mr. Gibbs left Louisiana in September 1998. He started a commercial photography business in Ocala, Florida, where he was able to secure two photo jobs for two advertising agencies. He was also paid $3,100 for performing computer work for his wife in Key West, Florida during November and December 1998. He eventually decided it would not be prudent to begin business relationships with Florida companies while he faced jail time in Louisiana relating to contempt charges for failure to pay alimony. He returned to Monroe in January 1999.
Mr. Gibbs testified that he was capable of earning $600 per day as a full-time commercial photographer. Mr. Gibbs gave several reasons why he ceased working primarily as a commercial photographer in order to earn $175 per day as a landman.
*267 He explained that in June 1996, an airline lost over $14,000 worth of his camera equipment. Mr. Gibbs eventually received compensation from the airline after he filed a lawsuit. He testified that he spent the proceeds from his lawsuit to pay off the note on his van. Mr. Gibbs was able to purchase $6,000 worth of used camera equipment, but this did not replace half of what he had lost. Mr. Gibbs continued to work using the used equipment, but he explained that he could not work as efficiently as before, which caused him to lose business. In addition to the lost equipment, he also had a camera lens "crater" in January 1997. Mr. Gibbs testified that he prefers making $600 per day five days a week, but he cannot do this with limited camera equipment, so therefore, he chooses to make $175 per day five days a week as a landman.
Mr. Gibbs had no income in January or February 1999. He lives in his current wife's home, and she pays his expenses. He testified that he has no assets. However, in August 1998, he donated his 1993 Mazda van and his 1996 Harley-Davidson motorcycle to his current wife. According to Mr. Gibbs, his only recent photo job was in March 1999, when he was paid $275 for six hours of work.
Mr. Gibbs was not working at the time of trial, nor was he even looking for a job, even though he considers himself still capable of earning money in the photography business. He explained, "I can't even go out and look for a job with the unpredictability of my situation." Because he was facing a contempt charge and could return to jail, he did not want to tell advertising agencies or other clients that he was available for work when he might not be able to do the jobs once they called. Mr. Gibbs obviously limits his employment opportunities as a photographer by choosing not to shoot weddings because, as he testified, weddings give him "hives." He further testified that he does not do portraits, proms or other special events because he is a commercial photographer and doesn't "chase that market."
Mr. Gibbs employs circular reasoning in his argument before this court, essentially arguing that he cannot work to earn money to pay his alimony because he might go to jail, and he might go to jail because he has no money to pay his alimony. He is clearly capable of earning a significant income and meeting his reduced alimony obligation by working as either a photographer or a petroleum landman. The trial court did not abuse its discretion in rejecting Mr. Gibbs' rule to terminate alimony.

Answer
Seeking to have this court address the reduction of the monthly alimony payments, Mrs. Gibbs has filed what is titled as an "Answer Brief." We note that the record does not reflect that Mrs. Gibbs ever filed an answer to this appeal. An appellee is required to file an answer to an appeal when he desires to have the judgment modified, revised, or reversed in part, or when he demands damages against the appellant. La. C.C.P. art. 2133. The "Answer Brief" does not satisfy the requirements of Art. 2133 as it is neither an answer nor an appeal. Gay v. Gay, 31,974 (La.App.2d Cir.6/16/99), 741 So.2d 149. We are precluded from addressing this issue raised only in Mrs. Gibbs's brief.

DECREE
At appellant's cost, the judgments are AFFIRMED.