839 So.2d 1222 (2003)
Mona Elizabeth Harper MIZELL, Plaintiff-Appellee,
v.
Jerry Allen MIZELL, Defendant-Appellant.
No. 37,004-CA.
Court of Appeal of Louisiana, Second Circuit.
March 7, 2003.
*1224 Donald L. Kneipp, Monroe, for Appellant.
Loomis & Dement, by: Albert E. Loomis, III, Jeffrey L. Dement, Monroe, for Appellee.
Before WILLIAMS, STEWART and GASKINS, JJ.
GASKINS, J.
Jerry Allen Mizell appeals from a trial court judgment in favor of his former wife, Mona Elizabeth Harper Mizell, which granted her more than $23,000 in past due child support and alimony and awarded her permanent alimony of $2,100 per month for 10 years. The judgment also found him in contempt and awarded her attorney fees of $5,000. We amend the judgment in part and, as amended, affirm.

FACTS
The parties were married in 1972. Three children were born of this marriage: two daughters, Heather, an adult at the time of the divorce, and Shaunté (DOB 8/9/77); and a son, Jerried Ashley (5/21/82). The parties separated in July 1993. In January 1994, Mona filed for divorce. She requested joint custody with the children primarily residing with her. She also sought alimony and child support of $4,200 per month. A divorce was granted in April 1994. Mona was made domiciliary parent under a joint custody plan. She was awarded $2,100 in alimony and $2,100 in child support per month in a judgment signed on April 18, 1994.
In October 2000, Mona filed the instant motion for past due alimony and child support. She alleged that Jerry had consistently been behind in his support payments and that he owed $116,012. She asked that Jerry be held in contempt and cast for attorney fees and court costs.
In November 2000, Jerry filed an answer in which he claimed that there was an agreement by which he was paying community debts. He asserted that his child support payments should be reduced by 50% as of June 1996, after Shaunté graduated from high school. He further claimed that Mona had failed to give him credit for some payments he made to her. Jerry also asserted that a five-year prescriptive period applied to bar payment of some of *1225 the arrearages. In his reconventional demand, he sought to terminate alimony and to reduce child support because Shaunté turned 18 on August 9, 1995, and graduated from high school in May 1996. In a separate pleading, Jerry sought a partition of community property.
In her December 2001 answer to the request for partition, Mona agreed that there should be a judicial partition of community property. However, should the court determine that Jerry's payment of the community house mortgage notes constituted alimony payments, she requested reimbursement and credit for the use of her separate funds to discharge a community debt.
Trial was held in December 2001. The parties stipulated that Jerry be given credit against the arrearages for his payments on the first and second mortgages on the family home, as well as a van note that was paid off in 1995. Mona specified that in agreeing to the stipulation, she was not conceding that she had entered into any agreement with Jerry whereby he was to get credit for those payments.
Testimony demonstrated that the parties married when Mona was 20 and Jerry was 23. During their 22-year marriage, Monaa high school graduateremained at home to raise the couple's three children. Her only employment outside of the home was a brief period as a teacher's assistant. Jerry, a college graduate, served in the U.S. Army during the early years of the marriage and then began a career in construction management. Although he had very brief periods of unemployment, in about 1990 he began working overseas; the projects involved renovations of American embassies and consulates in such places as China, Greece, India and Turkey. While employed in this capacity, his annual salary was in the mid to upper $80,000's. In 1999, he changed employers and he presently works on yearly contracts. His 2000 federal tax return showed that he earned in excess of $172,000. At the time of trial, he was living in the Ukraine, working for the same employer on a missile dismantlement and elimination project.
Immediately after the April 1994 decree, Jerry paid the full monthly amounts for child support and alimony as set forth in the judgment. However, he testified that when he returned home from China in June 1994, he found that Mona was behind in paying the first and second mortgage notes and the van note, all of which were in his name. (Mona denied that the notes were delinquent and Jerry was unable to provide documentation supporting this claim.) He gave his oldest daughter Heather authority to write checks on his account. He instructed her to pay the notes directly, and he began to reduce Mona's support payments. Although he testified that Mona agreed to this arrangement, she testified that she did not. Even when the second mortgage and van notes were paid off, he did not increase his payments to Mona.
Jerry also testified that when Shaunté turned 18 in August 1995, he was going to reduce the child support by half but Mona insisted that he continue paying until the girl graduated from high school in May 1996. In June 1996, Jerry instructed Heather to reduce the amount of child support he was paying. In August 1996, Mona began working at State Farm as a life and health administrative clerk.
Mona testified that she did not confront Jerry about his failure to pay the full amount owed under the judgment because the children didn't want her to "rock the *1226 boat" with their father and she feared he would make more reductions if she angered him. However, in 1999, she contacted an attorney who wrote to Jerry about the accumulating arrearages and informed him that he could not independently pay third parties sums of money on behalf of the children and claim a credit. Heather also e-mailed her father and informed him about the past due amounts. After receiving the letter from Mona's attorney, Jerry stopped communicating with Mona and continued making the deductions. Thereafter, he removed Heather from his checking account.
According to the testimony, Jerry then hired a CPA to distribute money for him. Jerry instructs the CPA what and how much to pay. Jerried graduated from high school at age 19 in May 2001 and thereafter enlisted in the Marine Corps. Following his son's graduation, Jerry ceased paying child support. At the time of trial, he was paying Mona $1288 per month in support and directly paying the house note which was about $812.
On July 30, 2002, the court issued written reasons for judgment. The court declined to give Jerry credit for payments made for Visa payments that accrued during the community. As to child support, the court found that the parties had agreed to a reduction of $1,050 in child support after Shaunté's graduation. The court found this appropriate in light of the facts that Jerry paid for his daughter's wedding and that he was more generous in his support of the children than required under the judgment. Accordingly, child support for Shaunté was deemed terminated as of June 1, 1996. Effective January 1, 2001, child support for Jerried was set at $1,387 per month. However, the court declined to otherwise give Jerry credit for such acts as buying a truck or paying insurance for the children. The court held that the evidence did not support a finding that Mona agreed to allow him to reduce his child support obligation according to the amounts paid at his own election.
As to alimony, the court found that Mona, age 49, was entitled to permanent alimony for a period of 10 years. The court held that, in light of the debt structure demonstrated by Mona at trial, termination of alimony was not appropriate. Other factors considered by the court in awarding alimony were the long-term nature of the marriage and Mona's position as a housewife who cared for the children during Jerry's extensive overseas, work-related absences. The court also considered that in 2000, Jerry's income in construction management was $172,000 whereas Mona's was in the range of $20,000 and she had significant debt.
The court denied the exception of prescription. It found that Jerry owed Mona a total of $23,792 for past due alimony and child support. On the issue of contempt, the court noted that many of the payments for which Jerry sought credit were rejected by the court as not a proper basis for such reduction. The court also considered his generosity to the children. However, since Mona was obliged to hire counsel and file suit because of his failure to address his delinquency, the court found him in contempt. Jerry was ordered to pay $5,000 in attorney fees, as well as all court costs incurred since October 1, 2000. He was given a sentence of 60 days in jail, suspended for one year on condition he comply with the court's order. Judgment was signed August 3, 2002.
Jerry appeals.

PAST DUE ALIMONY
Jerry contends that the trial court erred in finding that Mona was entitled to past *1227 due alimony. He argues that while the trial court was correct in finding an agreement to reduce child support when the children reached majority, it was manifestly wrong in failing to find a similar agreement to reduce alimony.
Mona corrects Jerry's assertion in brief that the sum of $23,792 awarded in the judgment was only for alimony; to the contrary, the judgment specifies that it is for "back due child support and alimony." Mona further disputes Jerry's assertion that there was evidence of an agreement to reduce her alimony when the second mortgage and van notes were paid off. She maintains that there was no agreement to reduce the payments owed under the April 1994 judgment. She also contends that due to Jerry's unilateral decision to alter the amount each month she never knew what payment she would receive and that she feared antagonizing him for fear that he would arbitrarily reduce the payments even more.

Law
The general rule in Louisiana is that an alimony or child support judgment remains in effect until the party liable has it modified or terminated by the court. Halcomb v. Halcomb, 352 So.2d 1013 (La. 1977).
The policy reason behind this rule is obvious. The law does not want to encourage those owing alimony or child support to become involved in "self-help" by making their own determinations as to when they have satisfied their alimony or child support obligations by some method other than payment in accordance with the court order. Vallaire v. Vallaire, 433 So.2d 315 (La.App. 1st Cir.1983). There is an exception to this general rule when the evidence shows the parties have clearly agreed to waive or otherwise modify the court-ordered payments. Vallaire, supra. Mere acquiescence in the obligor's failure to pay the full amount of support is not a waiver. Vallaire, supra; Guidry v. Guidry, 535 So.2d 1272 (La.App. 3d Cir.1988); Weldon v. Weldon, XXXX-XXXX (La.App. 3d Cir.2/3/99), 737 So.2d 812.
The burden of proof of the existence of the agreement is on the party seeking to modify his obligation under the judgment. Gomez v. Gomez, 421 So.2d 426 (La.App. 1st Cir.1982).
In the area of domestic relations, much discretion must be vested in the trial judge and particularly in evaluating the weight of evidence which is to be resolved primarily on the basis of the credibility of witnesses. The trial judge having observed the demeanor of the witnesses is in the better position to rule on their credibility. Pearce v. Pearce, 348 So.2d 75 (La. 1977). The factual findings of the trial court are therefore to be accorded very substantial weight on review. Pearce, supra.
It is hornbook law that the factfinder has a right to accept or reject, in whole or in part, the testimony of any witness. Walden v. Walden, 2000-2911 (La.App. 1st Cir.8/14/02), 835 So.2d 513.

Discussion
Jerry asserted that there were two separate agreements to modify his support payments. The first was allegedly confected in about July 1994 during a conversation in their kitchen. He asserted that when he returned home from abroad several months after the April 1994 judgment, he found that Mona had failed to pay several obligations that were in his name. He proposed taking over those recurring *1228 expenses and told Mona he was going to reduce her support payment to cover the others he was making directly. According to Jerry's testimony, she agreed. Mona denied any such agreement and testified that when Jerry returned from China the house and van notes were current. At trial Jerry did not furnish any evidence that Mona had, in fact, been delinquent in payment of the notes. Also, the testimony showed that once the second mortgage and van notes were paid off, Jerry did not increase his monthly payment to Mona.[1]
The second alleged agreement was supposedly reached in September 1995 after Shaunté turned 18 but still had a year in high school. According to Jerry, Mona insisted that he continue paying child support for Shaunté until she graduated and he agreed. After her May 1996 graduation, he reduced his child support payment. Mona testified that he reduced the amount without consulting her.
The trial court found that there was an agreement as to reducing child support; however, it further found that there was no agreement to reduce the support payments by direct payments made by Jerry at his own discretion. After a careful review of the evidence, we find no manifest error in the trial court's great discretion. The trial court was in the best position to judge the credibility of the witnesses and to accept or reject, in whole or in part, their testimony. Its finding that there was no agreement other than the one to reduce child support after Shaunté's graduation is adequately supported by the record.

CONTEMPT
Jerry asserts that the finding of contempt against him was "gross error" because he didn't "flout" the judgment or abandon his family. He argues that since he was generous with his children and ultimately paid more than required under the judgmentif one counts the direct payments on the notes and to and on behalf of the childrena finding of contempt was inappropriate. Even if he was mistaken about the alleged agreements, he maintains that he was in good faith. He also argues that the award of attorney fees was not appropriate.
Mona contests Jerry's assertion of good faith, pointing to the 1999 letter whereby her attorney informed him that he could not independently pay third parties sums on behalf of the children and claim a credit against the support obligations.

Law
The trial court is vested with great discretion in determining whether a party should be held in contempt for disobeying the court's order and its decision will only be reversed when the appellate court can discern an abuse of that discretion. Stephens v. Stephens, 30,498 (La.App.2d Cir.5/13/98), 714 So.2d 115; Sawyer v. Sawyer, 35,583 (La.App.2d Cir.11/2/01), 799 So.2d 1226, writ not considered, XXXX-XXXX (La.2/8/02), 808 So.2d 349, reconsideration denied, XXXX-XXXX (La.3/22/02), 811 So.2d 935.
A proceeding for contempt in refusing to obey the court's orders is not designed *1229 for the benefit of the litigant, though infliction of a punishment may inure to the benefit of the mover in the rule. The object of the proceeding is to vindicate the dignity of the court. Stephens v. Stephens, supra.

Discussion
Jerry admitted in his testimony that he was told in 1999 that he could not independently pay third parties sums of money on behalf of the children and claim a credit. However, he still persisted in his belief that he should get a credit because he was meeting "the intent of the law." Based upon the evidence presented at trial, we cannot say that the trial court was manifestly wrong in finding that Jerry willfully failed to pay to Mona the amount set in the trial court judgment.
The award of attorney fees is independent of a finding of contempt of one party. Jones v. Jones, 34,822 (La. App.2d Cir.6/20/01) 793 So.2d 243. La. R.S. 9:375 provides, in relevant part:
A. When the court renders judgment in an action to make executory past-due payments under a spousal or child support award ..., it shall, except for good cause shown, award attorney's fees and costs to the prevailing party.
In the instant case, there was no good cause shown to negate an award of attorney fees payable under the statute. Mona prevailed on the issue of the arrearages and Jerry was found to be in contempt. Thus, the award of attorney fees to Mona was not an abuse of discretion.

ALIMONY
Jerry contends that no permanent alimony is owed or, alternatively, it should be reduced to $500 per month. He argues that since Mona is employed in a job that pays $25,000 per year and all of the children are now majors, she does not need alimony. Jerry contends that the trial court erred in considering the amount of debt she has and that it should have considered the amount she might gain from the eventual partition of community property. On the other hand, Mona argues that she demonstrated a basic need; she also emphasized the extreme earning disparity between her and Jerry.

Law
Permanent alimony is awarded to a former spouse in need and is limited to an amount sufficient for maintenance as opposed to continuing an accustomed style of living. Brewton v. Brewton, 30,134 (La. App.2d Cir.1/21/98), 705 So.2d 799; Gibbs v. Gibbs, 33,169 (La.App.2d Cir. 6/21/00), 764 So.2d 261; Council v. Council, 34,290 (La.App.2d Cir.12/15/00), 775 So.2d 628. Maintenance includes food, shelter, clothing, transportation, medical and drug expenses, utilities, household maintenance and income tax liability generated by alimony payments. Settle v. Settle, 25,643 (La.App.2d Cir.3/30/94), 635 So.2d 456, writ denied, 94-1340 (La.9/16/94), 642 So.2d 194; Gibbs v. Gibbs, supra.
The award of alimony after divorceor final periodic spousal support, as it is now calledis governed by La. C.C. art. 112 which provides:
A. The court must consider all relevant factors in determining the entitlement, amount, and duration of final support. Those factors may include:
(1) The needs of the parties.
(2) The income and means of the parties, including the liquidity of such means.

*1230 (3) The financial obligations of the parties.
(4) The earning capacity of the parties.
(5) The effect of custody of children upon a party's earning capacity.
(6) The time necessary for the claimant to acquire appropriate education, training, or employment.
(7) The health and age of the parties.
(8) The duration of the marriage.
(9) The tax consequences to either or both parties.
B. The sum awarded under this Article shall not exceed one-third of the obligor's net income.
An award of alimony is never final. Gibbs v. Gibbs, supra; Gilbreath v. Gilbreath, 32,292 (La.App.2d Cir.9/22/99), 743 So.2d 300. An award of periodic support may be modified if the circumstances of either party materially change and shall be terminated if it has become unnecessary. La. C.C. art. 114. The party seeking the modification or termination of support carries the burden of proof that circumstances have changed since the original award. Gibbs v. Gibbs, supra; Gilbreath v. Gilbreath, supra.
A finding of a change in circumstances does not axiomatically result in a modification or termination of support. Such a factual finding does, however, shift the burden to the party opposing the modification or termination of alimony to prove need and the relevant factors as set forth in La. C.C. art. 112, such as earning capacity. Brewton v. Brewton, supra; Gilbreath v. Gilbreath, supra.
The trial court is vested with great discretion in making alimony determinations and its judgment will not be disturbed absent a manifest abuse of that discretion. Council v. Council, supra.

Discussion
At the time the original judgment awarding her $2,100 per month in alimony was signed, Mona was an unemployed, newly divorced housewife with two teenage children living at home. Now she is employed as an administrative clerk at an insurance agency. Living with her at the present time is her oldest child, Heather, an adult who only works parttime and contributes nothing to the major household bills. Jerry pays for Heather's car note and insurance, as well as her bank note.
At trial, Mona testified that her monthly gross salary was $2,085. She is paid every two weeks. Her deductions per paycheck included $322.42 for her car note and a signature loan. Also deducted from each paycheck was $63.88 for medical coverage for herself and her adult son. The monthly house note was $812.
We note that several of the household costs set forth by Mona at trial included living expenses for two of her children. However, her son is now an adult and is enlisted in the Marines; he no longer lives with her. Mona pays for the utilities and food consumed by Heather, her 27-year-old daughter. The jurisprudence clearly does not allow the support of major children to be considered a living expense of one of the spouses. Green v. Green, 432 So.2d 959 (La.App. 4th Cir.1983); Parker v. Parker, 93-817 (La.App. 3d Cir.3/2/94), 634 So.2d 1231; Launey v. Launey, 1998-849 (La.App. 3d Cir.12/9/98), 722 So.2d 406.
We find that Jerry showed a change of circumstances since the original judgment.
*1231 The burden of proof then shifted to Mona. Since Mona is no longer legally responsible for the expenses of her childrenwho are now all adultsmany of the expenses set forth on her affidavit of income and expenses are no longer valid considerations in setting alimony. After considering the maintenance expenses that are appropriate factors for alimony and removing expenses for the adult children, we find that Mona has shown a continuing need for support; however, a reduction from $2,100 to $1,000 in monthly alimony is appropriate.
Given the circumstances of this case, we remove the 10 year time period placed upon the payment of alimony to Mona. As previously noted, an award of alimony is never final. Over time, circumstances may change such that Mona will be entitled to alimony for less than 10 years. (We note that Mona and Jerry have not completed their community property partition.) However, it is also possible that Mona's need may extend beyond a period of 10 years.

CONCLUSION
We amend the portion of the trial court judgment that awarded Mona permanent alimony of $2,100 per month for a period of 10 years to reduce the monthly amount to $1,000 per month for an unspecified period of time. In all other respects, we affirm the trial court judgment.
Costs of this appeal are assessed equally between the parties.
AMENDED AND, AS AMENDED, AFFIRMED.
NOTES
[1] Jerry relies in part upon a letter he wrote to Mona's lawyer in December 1993 in which he stated that he would like for the support obligations to be adjusted after various bills were paid in full; these included the second mortgage and some credit card bills. In his response, the attorney stated that if Mona did not cooperate with Jerry in reducing the monthly support at a later date, Jerry "would be at liberty to have the amount reduced based on her needs." However, the record shows that Jerry did not go to court to have the amount reduced.