# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 05-580

**AMANDA DOMINGUE, ET AL.**

**VERSUS**

**LEGION INDEMNITY CO., ET AL.**

************

**APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 2000-2449-E
HONORABLE HERMAN C. CLAUSE, DISTRICT JUDGE**

************

**JAMES T. GENOVESE
JUDGE**

************

Court composed of Sylvia R. Cooks, Michael G. Sullivan, and James T. Genovese, Judges.

**Cooks, J., concurs and assigns reasons.**

**AFFIRMED.**

**David O. Walker
Post Office Box 1190
Alexandria, Louisiana 71309
COUNSEL FOR PLAINTIFF/APPELLANT:**
    Amanda Domingue

**Michael W. Adley
Post Office Drawer 51769
Lafayette, Louisiana 70505-1769
COUNSEL FOR DEFENDANT/APPELLEE:**
    Federal Insurance Co.

**Larry Lane Roy
Frederick Douglas Gatz, Jr.
George Edward Williams, Jr.
Dawn L. Morris
Post Office Drawer 94-C
Lafayette, Louisiana 70509
COUNSEL FOR DEFENDANTS:**
    John Ard
    Allstate Indemnity Company

**Mark E. Stipe**
**Post Office Box 52169**
**Lafayette, Louisiana  70505**
**COUNSEL FOR DEFENDANT:**
      **Louisiana Motors, Inc.**

**GENOVESE, Judge.**

Plaintiff appeals the judgment of the trial court denying her motion for summary judgment and granting summary judgment in favor of Defendant insurer relative to the issue of liability insurance coverage. For the following reasons, we affirm.

**RELEVANT FACTS AND PROCEDURAL HISTORY**

On May 21, 1999, Ronald Domingue was killed while riding his bicycle when struck by an automobile being operated by Defendant, John Ard ("Ard"). Ard was operating a vehicle owned by Defendant, Louisiana Motors, Inc. ("Louisiana Motors"), with permission. Ard, an independent contractor, was hired by Louisiana Motors to clean and detail the vehicle at his shop and return the vehicle to Louisiana Motors.

On May 3, 2000, the mother of Ronald Domingue, Amanda Domingue ("Domingue"), filed the instant wrongful death/survival action claims against Ard and his personal auto liability insurer, Allstate Indemnity Company ("Allstate"), Louisiana Motors and its auto liability insurer, Legion Indemnity Company ("Legion"), and Federal Insurance Company ("Federal"), who provided a commercial umbrella liability insurance policy to Louisiana Motors.

Louisiana Motors filed a motion for summary judgment seeking to dismiss the claims asserted against it on the basis that it was not the employer of Ard at the time of the accident and that there was no evidence to support a negligent entrustment claim. The trial court granted summary judgment in favor of Louisiana Motors and dismissed Domingue's claims, with prejudice, by judgment signed on August 20, 2001.

Domingue asserted that Ard qualified as an omnibus insured under the Legion insurance policy issued to Louisiana Motors providing $1,000,000.00 in commercial

1

auto liability coverage. Legion filed a motion for partial summary judgment seeking to reduce its coverage limits to $10,000.00. The trial court denied Legion's motion for partial summary judgment and ruled that the Legion policy provided $1,000,000.00 in liability insurance coverage to Lafayette Motors which covered Ard as an omnibus insured for the claims asserted against him.

In early 2002, Domingue purportedly settled all claims against Ard with Legion at mediation; however, before the settlement proceeds were paid and formal settlement documents were effectuated, Legion became insolvent and was liquidated by court order dated April 9, 2003. Because Legion is a surplus line insurance carrier not authorized to transact insurance business in the State of Louisiana, the claims against Legion are not covered claims under the Louisiana Insurance Guaranty Law, as set forth in La.R.S. 22:1379, *et seq.*

On March 29, 2004, Domingue filed a motion for summary judgment claiming that the commercial umbrella liability insurance policy issued to Louisiana Motors by Federal "dropped down" to provide primary liability insurance coverage to Ard. Federal filed a cross-motion for summary judgment on May 14, 2004, asserting that it was entitled to a judgment declaring that its insurance policy did not "drop down" to provide primary liability insurance coverage to Ard.

The trial court granted summary judgment in favor of Federal and dismissed Domingue's claims against Federal, with prejudice, by judgment signed on October 25, 2004. Domingue appeals.

## LAW AND DISCUSSION

### Standard of Review

Since the trial court decided the issue of insurance coverage by summary judgment, this court's standard of review is *de novo* and is governed by the same criteria that governed the trial court's determination of whether summary judgment

2

is appropriate. *Singegal v. Kennedy*, 04-299 (La.App. 3 Cir. 9/29/04), 883 So.2d 1079; La.Code Civ.P. art. 966.

**Insurance Coverage**

The sole issue on appeal is whether the Federal commercial umbrella liability insurance policy issued to Lafayette Motors drops down to provide coverage due to the insolvency of the primary insurer, Legion. The trial judge concluded that Federal's policy did not "drop down." We agree.

Federal issued a commercial umbrella policy to Louisiana Motors bearing policy number 7975-52-67 KCO. The liability insurance policy features two insuring agreements.

The first insuring agreement, Coverage A, provides excess follow form liability coverage. Coverage A provides, in pertinent part (emphasis in original):

> Under Coverage A, we will pay on behalf of the **insured**, that part of **loss** covered by this insurance in excess of the total applicable limits of **underlying insurance**, provided the injury or offense takes place during the Policy Period of this policy.

The policy defines "underlying insurance" as "the policy or policies of insurance listed in the Schedule of Underlying Insurance forming a part of this policy." The "Schedule of Underlying Insurance" lists a garage keepers legal liability insurance issued by Legion in the amount of $500,000.00 per location, and a garage liability insurance issued by Landmark Insurance Company in the amount of $1,000,000.00 per occurrence.

The policy imposes the condition upon the insured that "while this policy is in effect you agree to maintain **underlying insurance** in full force" (emphasis in original). The policy's terms and conditions further provide, in pertinent part, that "collectibility of **underlying insurance** limits as listed in the Schedule of Underlying Insurance, or replacements thereof, must be available regardless of the bankruptcy or insolvency of the underlying insurer" (emphasis in original). There is clearly no

3

"drop down" under this policy provision since the collectibility of the underlying insurance issued by Legion was not available due to Legion's insolvency.  Federal's policy does specifically provide, in respect to Coverage A, that there are situations in which the policy will "drop down."  Those situations are only "if the limits of **underlying insurance** have been reduced by payment of **loss**" or "if the limits of **underlying insurance** have been exhausted by payment of **loss**" (emphasis in original).  Thus, we agree that Coverage A of Federal's policy does not "drop down" to provide coverage due to the insolvency of the primary insurer, Legion.

The second insuring agreement, Coverage B, provides umbrella liability coverage.  Coverage B provides, in pertinent part (emphasis in original):

> Under Coverage B, we will pay on behalf of the **insured** damages the **insured** becomes legally obligated to pay by reason of liability imposed by law or assumed under an **insured contract** because of **bodily injury**, **property damage**, **personal injury**, or **advertising injury** covered by this insurance which takes place during the Policy Period of this policy and is caused by an **occurrence**.  We will pay such damages in excess of the Retained Limit Aggregate, specified in Item 4d, of the Declarations or the amount payable by **other insurance**, whichever is greater.

The exclusions applicable to Coverage B specifically provide that this insurance does not apply to "any liability arising out of the ownership, maintenance, use, loading or unloading or entrustment to others of **autos** within the United States of America, including its possessions and territories, Puerto Rico, Canada or while **autos** are being transported between these places" (emphasis in original).

The accident which forms the basis of this suit occurred when Louisiana Motors entrusted Ard with a vehicle for the purpose of detailing said vehicle.  The cited exclusion applies to negate coverage under Federal's policy.  Therefore, we agree that Coverage B of Federal's policy does not "drop down" to provide coverage either.

**Damages for Frivolous Appeal**

4

Finally, Federal asserts in its response brief to Domingue's appeal that it is entitled to damages for "frivolous" appeal. We note that the record does not reflect that Federal ever filed an answer to this appeal. An appellee shall answer an appeal when he desires to have the judgment modified, revised, or reversed in part, or when he demands damages against the appellant. La.Code Civ.P. art. 2133. This request for damages for frivolous appeal by Federal in its response brief to Domingue's appeal does not satisfy the requirements of Article 2133 as it is neither an answer nor an appeal. *Roberts v. Robicheaux,* 04-1405 (La.App. 3 Cir. 3/2/05), 896 So.2d 1232, *writ denied*, 05-792 (La. 5/13/05), 902 So.2d 1021, *citing Gibbs v. Gibbs*, 33,169 (La.App. 2 Cir. 6/21/00), 764 So.2d 261; *Gay v. Gay*, 31,974 (La.App. 2 Cir. 6/16/99), 741 So.2d 149. Therefore, the issue of Federal's request for damages for frivolous appeal is not before this court and is thereby denied.

## DECREE

For the foregoing reasons, the judgment of the trial court granting Federal's motion for summary judgment and denying Domingue's motion for summary judgment is affirmed. Costs of this appeal are assessed against Appellant.

**AFFIRMED.**

AMANDA DOMINGUE, ET AL.

VERSUS

LEGION INDEMNITY CO., ET AL.

**COOKS, J., concurring**:

I concur in the result. I agree with the conclusion that the Federal policy does

not provide coverage as a result of Exclusion C, which provides:

C.    Under Coverage B, this insurance does not apply to:

*    *    *

any liability arising out of the ownership, maintenance, use
loading or unloading or entrustment to others of autos
within the United States of America, including its
possessions and territories, Puerto Rico, Canada or while
autos are being transported between these places.