920 So.2d 927 (2006)
Mona Elizabeth Harper MIZELL, Plaintiff-Appellee
v.
Jerry Allen MIZELL, Defendant-Appellant.
No. 40,601-CA.
Court of Appeal of Louisiana, Second Circuit.
January 25, 2006.
*928 Donald L. Kneipp, Monroe, for Appellant.
Loomis & Dement, by Albert E. Loomis, III, Monroe, for Appellee.
Before STEWART, PEATROSS & DREW, JJ.
PEATROSS, J.
In 2002, Jerry Allen Mizell ("Jerry") and his wife, Mona Elizabeth Harper Mizell ("Mona"), were divorced. At that time, Jerry was ordered by the trial court to make permanent spousal support payments of $2,100 per month for ten years. On appeal, this court reduced that figure to $1,000 per month.[1] In 2005, Jerry challenged the permanent spousal payments and argued that they were unnecessary and that Mona's financial situation had changed such that she did not need them. After a bench trial on the matter, the trial judge refused to reduce or terminate said payments. From this ruling, Jerry now appeals. For the reasons set forth herein, we reverse and remand the lower court's ruling.

FACTS
This dispute concerns whether or not there exists a continued necessity for Jerry's permanent spousal support payments to Mona. Jerry and Mona were married for 22 years. Mona only worked during four of those years; and, according to both parties, at the time of divorce, she had "no skill or trade."[2] Following their divorce, Mona found employment with State Farm of Monroe, Louisiana, and her financial status improved. Her monthly income has increased $900 and she saw a decrease in her regular living expenses. As a result of her improved financial status, Jerry filed suit to terminate or reduce his court-ordered spousal payments. Shortly after the ruling in this suit, however, Mona was terminated from her job at State Farm. *929 Mona was given nine weeks of severance and had no job prospects at the time of trial. The trial court signed a motion on May 14, 2005, declining to reduce or terminate periodic spousal support. From this ruling, Jerry now appeals.

DISCUSSION

Issue (verbatim): Whether the trial court committed legal errors and abused its discretion in denying Mr. Mizell's motion to terminate or reduce spousal support, given that the trial court considered improper facts, neglected relevant facts, and misapplied the law to the facts actually shown.
Permanent alimony is awarded to a former spouse in need and is limited to an amount sufficient for maintenance as opposed to continuing an accustomed style of living. Brewton v. Brewton, 30,134 (La. App.2d Cir.1/21/98), 705 So.2d 799; Gibbs v. Gibbs, 33,169 (La.App.2d Cir.6/21/00), 764 So.2d 261; Francis Council v. Council, 34,290 (La.App.2d Cir.12/15/00), 775 So.2d 628. Maintenance is limited to necessary items such as food, shelter, clothing, transportation, medical and drug expenses, utilities, household necessities and income tax liabilities generated by alimony payments. Settle v. Settle, 25,643 (La.App.2d Cir.3/30/94), 635 So.2d 456, writ denied, 94-1340 (La.9/16/94) 642 So.2d 194; Gibbs, supra.
Final periodic spousal support is governed by La. C.C. art. 112 ("the 112 factors"), which states:
A. The court must consider all relevant factors in determining the entitlement, amount, and duration of final support. Those factors may include:
(1) The needs of the parties.
(2) The income and means of the parties, including the liquidity of such means.
(3) The financial obligations of the parties.
(4) The earning capacity of the parties.
(5) The effect of custody of children upon a party's earning capacity.
(6) The time necessary for the claimant to acquire appropriate education, training, or employment.
(7) The health and age of the parties.
(8) The duration of the marriage.
(9) The tax consequences to either or both parties.
An award of spousal support is never final. Gibbs, supra. An award of periodic support may be modified if the circumstances of either party materially change and shall be terminated if it has become unnecessary, per La. C.C. art. 114. The burden of proof (that circumstances have changed) lies with the party seeking the termination or modification. Id. A finding of change in circumstances does not automatically result in a modification or termination of support. Brewton, supra. Such a factual finding does, however, shift the burden to the party opposing the modification or termination of alimony to prove need and the relevant 112 factors. Id.
Jerry first argues that, because the trial judge did not explain his reasons for judgment, the parties and this court are left to speculate regarding how he reached his conclusion. To this end, Jerry asserts that the trial judge used "inflated estimates" offered by Mona in his ruling on this matter. Jerry argues that the estimates given by Mona via affidavit, and relied upon by the trial judge, were "flatly contradicted" by her actual expenses as shown in her bank statements.
Jerry argues that Mona's monthly maintenance expenses are $2,033.53, $912.84 of which is her house note. He contends that the house note is actually an amalgamation of three consolidated debts and a cash pay *930 out: (1) $58,235.67 of remaining balance on the (former) matrimonial domicile; (2) $38,772.97 of Mona's personal credit card debt; (3) $11,292.51 in "unspecified debts" and (4) $19,759.52 in cash. From this, Jerry contends that the only debt properly attributable to Mona's living expenses is the outstanding balance on the house, which constitutes approximately 44 percent of the total debt, or $402.73. Jerry contends that the remaining $510.11 should be deducted from the $2,033.53 maintenance figure, leaving him to pay $1,523.43.
Jerry next asserts that the trial court identified "assisting daughter" as a 112 factor in its ruling. He points out that the trial court erred in making this consideration as the couple's children were both majors at the time of the ruling. He cites Green v. Green, 432 So.2d 959 (La.App. 4th Cir.1983); Launey v. Launey, 98-849 (La. App. 4th Cir.12/9/98), 722 So.2d 406; and Parker v. Parker, 93-817 (La.App. 3d Cir.3/2/94), 634 So.2d 1231; for the proposition that, under Louisiana jurisprudence, the support of a major child has no bearing in determining a spouse's need for spousal support. Jerry argues that this was a "clear error" by the trial judge and cites Parker, supra, for the proposition that Mona's household expenses should be reduced by half to $761.21.[3]
Jerry next argues that the fact that Mona could prospectively become unemployed should not have been included among the 112 factors listed by the court. More to the point, he notes that, at the time of this ruling, Mona was employed and was earning an annual salary of $30,443.73. In summation, Jerry argues that the trial judge undertook speculative considerations in this case and was in error by ruling as he did.
Jerry states that Mona owed $912 per month on the "house note," but he argues that only a portion of this amount was allocated towards the matrimonial domicile. He argues that the remainder was "attributable to [Mona's] personal debt." In support of this, he cites Launey, supra, which held that a wife's monthly credit card debt and personal loan payments are not properly considered as "living expenses" for the purposes of determining her entitlement to spousal support.
Jerry next points out that Mona was able to liquidate $20,000 in home equity as a result of the couple's community property partition. He argues that the trial court erred by not considering this issue in his ruling. In summation, Jerry asserts that the trial court abused its discretion and/or erred in ruling on this matter. He states that the trial judge "fundamentally misunderstood the governing law" in this matter.
Mona initially responds that Jerry's brief is unorganized and difficult to follow. She states that, at no point, does Jerry enumerate exactly what expenses, "significant income" and assets she received via the community property settlement. Mona argues that Jerry provided no basis for how he arrived at $1,003.51 as her monthly maintenance expenses. Moreover, she notes that Jerry does not specify what expenses pertaining to the [couple's] major daughter and credit card expenses the court considered which were objectionable. She argues that the trial court is obligated to consider the 112 factors of the parties in a case, including their liquidity and earning capacity.
*931 More to the point, Mona cites Vorisek v. Vorisek, 423 So.2d 758 (La.App. 4th Cir. 1982), in which the fourth circuit stated:
Maintenance includes the basic necessities of life, such as food, clothing and shelter. Included under "maintenance" would be necessary transportation, auto expense, medical and drug expense, utilities, household expense and income tax liability resulting from the payment. (Citations omitted.)
She further cites Wascom v. Wascom, 97-0547 (La.App. 1st Cir.1998), 713 So.2d 1271, writ denied, 98-2028 (La.11/6/98), 728 So.2d 391, which stated:
`Support' means a sum sufficient for the claimant spouse's maintenance, which includes the allowable expenses for food, shelter, clothing, reasonable and necessary transportation or automobile expenses, medical and drug expenses, and the income tax liability generated by alimony payments.
To this end, she argues that her maintenance expenses are actually $2,856.84,[4] not the $2,033.53 alleged by Jerry.
Mona next responds to Jerry's assertion that personal debt was included by the trial judge in arriving at the $912.84 house payment by stating that there "is not a single case cited in Louisiana jurisprudence" suggesting that it is proper to trace back a house note and classify it in this manner. Mona further refers to this argument as "an act [of] desperation" by Jerry, who, she contends, has "engaged in hair-splitting for over a decade." To this end, she cites Patton v. Patton, 37,401 37,402 (La.App.2d Cir.9/24/03), 856 So.2d 56, in which this court held, inter alia:
There cannot be an exact formula or rule for deciding whether and to what extent any depletion of assets is required of a spousal support claimant; rather, courts must apply a rule of reasonableness," in light of such factors as the value and liquidity of the assets, the ages and the mental and physical health of the parties, and their relative ability, education, and work experience. The problem is of such a nature as to be insusceptible of solution by any exact formula or monetary index, and the court should proceed with great caution and due regard for the probable long range effects of any depletion contemplated. (Citations omitted.)
From this, Mona submits that a community property partition in no way changes her means of support and does not, in any way, provide a basis for reversal of this case.
Mona next responds to Jerry's assertion that the trial court erroneously considered expenses attributable to the couple's major children. She first points out that Jerry never precisely itemized what expenses she supposedly paid on behalf of the children. Mona next outlines that her oldest daughter only works "sporadically" and suffers severe migraines and depression. She asserts that, while the 112 factors are geared around consideration of the financial obligation of the party to the suit, it "is difficult to argue that the mother does not have a natural obligation to care for an afflicted major child." Accordingly, she *932 argues that this consideration by the trial judge did not constitute reversible error.
Mona next responds to Jerry's assertion that the trial judge erred by basing a portion of his ruling on the "speculative assertion as to [her] employment status." She responds by pointing to the following testimony given by Jerry:
Q: Did your ex-wife Mona Mizell accurately depict her employment history to the court?
A: To the best of my knowledge, yes.
Q: Do you dispute the fact that she would no longer be employed at State Farm as of June 30, 2005.
A: No.
....
Q: For the most part during the marriage, was she in the status of not working?
A: Yes.
From this, Mona points out that, by his own testimony, Jerry admits that her work status was, at best, "speculative." She further notes that she has a high school education, no college education, no trade schooling and no identifiable, work-related skill. Mona also mentions that she is 53, suffers from chronic lower abdominal pain (resulting from a hysterectomy) and a "lung problem." In summation, Mona argues that it is well established that she has lost her job with State Farm and that Jerry was well apprised of, and did not dispute, this fact.
Mona next responds to Jerry's assertion that the parties' community property partition was not properly considered by the trial court. Mona states that she received one-hundred percent ownership of the matrimonial domicile, which includes $32,000 in equity, $10,000 in savings which was earmarked for substantial housing repairs, $3,800 in her checking account and $300 in her State Farm savings account. She further responds that there was no additional, unaccounted for $8,000. Mona testified that any additional funds she acquired came from her State Farm savings account.
Finally, Mona responds to Jerry's assertion that there exist numerous legal errors and an abuse of discretion. She contends that Jerry's assertion that she has "been financially independent" for many years is simply untrue. To the contrary, she contends that she has been very dependent on her spousal support payments. Mona argues that Jerry correctly stated the law as applied under Gibbs, supra, and Brewton, supra; however, she contends that the change of circumstance in this case has been to her detriment, not her betterment.
Again, Mona points out that she is older, unemployed, uneducated, suffering from poor health and supporting a major child who suffers from migraines and depression. Accordingly, she argues that, per Council, supra, the trial court did not abuse its discretion. She notes the following statement in Jerry's brief:
Additionally, the Ruling clearly misapplies the governing law; e.g. the Trial Judge considered the relative income of the parties instead of determining whether [Mona's] income is sufficient to support her needs. Any of these legal errors individually might be insufficient to render the Trial Judge's ruling and order invalid.
Mona responds to this statement by noting that Patton, supra, explicitly declares that the relative financial position of the parties can be a relevant factor considered by the court. Further, Goodnight v. Goodnight, 98-1892 (La.App. 3d Cir.5/5/99), 735 So.2d 809, declared, in part:
Factors to consider in determining whether an ex-spouse is in need of alimony include her income, means, earning *933 capacity, assets, the liquidity of the assets, her financial obligations, her health and age and any other circumstances deemed relevant by the court.
Accordingly, Mona argues that the trial judge did not abuse his discretion by ruling as he did. We disagree.
The record in the case sub judice reflects no jurisprudence which was cited by Jerry supporting the proposition that it is appropriate for this court to trace a house note back in the manner in which he did, nor did he provide this court with the specific credit card expenses of Mona which were objectionable. Similarly, we find no merit to Jerry's assertion that Mona has been "financially independent." The 112 factors warrant that this court may consider financial ability and need and our review of this record reflects that Mona is 53, partially disabled, unemployed and not skilled via a college education, trade schooling or the like. To the contrary, Jerry earned a salary of over $186,000 in the year prior to this suit and is steadily employed. Accordingly, there is clear indication of Mona's need and Jerry's ability to pay in the evidence of this case.
This court does, however, find merit to Jerry's argument regarding Mona's support of the couple's major child. In this court's first review of this case, we stated:
We note that several of the household costs set forth by Mona at trial included living expenses for two of her children. However, her son is now an adult and is enlisted in the Marines; he no longer lives with her. Mona pays for the utilities and food consumed by Heather, her 27-year-old daughter. The jurisprudence clearly does not allow the support of major children to be considered a living expense of one of the spouses. Green v. Green, 432 So.2d 959 (La.App. 4th Cir.1983); Parker v. Parker, 93-817 (La.App.3d Cir.3/2/94), 634 So.2d 1231; Launey v. Launey, 98-849 (La. App. 3d Cir.12/9/98), 722 So.2d 406.
We find that Jerry showed a change of circumstances since the original judgment. The burden of proof then shifted to Mona. Since Mona is no longer legally responsible for the expenses of her children  who are now all adults  many of the expenses set forth on her affidavit of income and expenses are no longer valid considerations in setting alimony. After considering the maintenance expenses that are appropriate factors for alimony and removing expenses for the adult children, we find that Mona has shown a continuing need for support; however, a reduction from $2,100 to $1,000 in monthly alimony is appropriate. (Emphasis ours.)
Accordingly, the jurisprudence has provided a bright line rule on this point which has been reiterated over numerous decisions, including decisions by this court. The support of a major child may not be considered a living expense of one of the spouses.
More to the point, in the case sub judice, the trial judge used the words "assisting daughter, etc." in his ruling, and it is this specific language  and only this language  from which we elect to reverse the trial court's ruling and remand this case. This court had appreciable difficulty understanding the form-based ruling utilized by the trial court in this matter. While we believe that the trial court is seeking greater efficiency and clarity in judgments by using a standardized form, we caution it against continued use of this method. Judgments should be narrowly tailored to meet the needs of each respective case. Utilizing a form on which selections are underlined, indicated by bold letters, or marked with an "x" or other error *934 is subject to human error, can cloud appellate review and, as a result, could easily be a catalyst for confusion or mistakes. Moreover, reasons for judgment should be written to explain the findings of the court and/or basis of the court's decision. Although it may be sufficient in some circumstances, we do not find that the chart form used by the trial court to set forth its reasons for judgment and the form of factors in favor of each party to be the clearest, and most direct, method of conveying the court's reasoning. Under ordinary circumstances, this court would consider this scenario harmless error or would correct it under our own guise; however, because the intent of the trial judge's ruling is not clear and the consideration of the Mizells' major daughter was error, we are compelled to reverse and remand this case.
Accordingly, under the holdings of Green, supra, Parker, supra, Launey, supra, as referenced and incorporated in this court's previous ruling between these parties, and given the applicable facts and jurisprudence of this case, we reverse the trial court's ruling and remand for the specific purpose of adjusting Jerry's permanent spousal support payments by excluding any support for the couple's major daughter.

CONCLUSION
For the reasons set forth herein, the judgment of the trial court denying Jerry Allen Mizell's request to terminate permanent spousal support payments is reversed. Costs of this appeal are assessed to Mona Elizabeth Harper Mizell.
REVERSED AND REMANDED.
NOTES
[1] See, Mizell v. Mizell, 37,004 (La.App.2d Cir.3/7/03), 839 So.2d 1222.
[2] Notably, in the community partition, Mona received the matrimonial domicile, all household furnishings, a Chrysler van and all movable property in her possession at the time of divorce, other than a flatbed truck and a log table. The first mortgage on the matrimonial domicile was also reduced, allowing Mona to liquidate some of the equity in the house. We note that, in the year preceding trial on this matter, Jerry earned nearly $190,000 in salary.
[3] In Parker, supra, one party listed "living expenses" of $250, but later admitted that half of those expenses went to feeding the couple's 20-year-old son. Accordingly, the court cut this figure in half to $125, citing it as an improper consideration under Louisiana jurisprudence.
[4] Mona arrives at this figure accordingly: a house note of $912.84, homeowner's insurance of $108.09, water bill of $20, energy bill of $300, phone bill of $76.51, automobile insurance of $81, dental and health insurance of $203.62, pharmacy bill of $70, exterminator's bill of $35, automobile expenses of $200, food and household expenses of $465, medical and dental expenses of $100 and an increase in medical coverage costs of $284.28. We note that the aggregate of the aforementioned expenses, as listed in Mona's brief, is actually $2,856.34, or $.50 different from the result reached by Mona's attorney.