496 So.2d 1382 (1986)
DB ORBAN COMPANY, A Joint Venture between ABOrban Holding Company, Inc., & Koci  DB Holding Company, Inc., PlaintiffAppellant,
v.
LAKCO PIPE & SUPPLY, INC., DefendantAppellee.
No. 85-1191.
Court of Appeal of Louisiana, Third Circuit.
November 5, 1986.
*1383 Stockwell, Sievert, Viccellio, Clements & Shaddock, Emmett C. Sole, Lake Charles, for plaintiff-appellant.
*1384 Domengeaux and Wright, Charles M. Ponder, Clifton S. Carl, Lafayette, for defendant-appellee.
Before GUIDRY, DOUCET and KING, JJ.
DOUCET, Judge.
Plaintiff, DB Orban Company, instituted this suit to collect on the unpaid purchase price for steel pipe alleged to have been sold to defendant, Lakco Pipe & Supply, Inc. In its answer, Lakco claimed that the parties failed to agree on a price for the pipe and thus no contract of sale was perfected. Lakco also reconvened seeking the return of money paid to Orban in error and also seeking storage, transportation, and handling costs.
After trial on the merits, the district court rendered a judgment in favor of Lakco on the principal demand, finding that the contract of sale was never perfected. Orban was ordered to pick up the pipe remaining in Lakco's possession and credit Lakco's account for it. Lakco's reconventional demand was dismissed. Orban appealed and Lakco answered the appeal.
The testimony established that in April 1982, the parties entered into what each believed to be an agreement for the sale of pipe from Orban to Lakco. The parties agreed that the price for the pipe would be $400.00 per net ton based on the actual weight of the pipe.
Lakco picked up a total of 103 segments of pipe between April 29 and June 8, 1982. 73 segments remain in Lakco's possession, the balance having been sold or otherwise disposed of by Lakco. Two invoices, dated May 7 and May 27, 1982, for a total of 28 segments, were paid by Lakco. Upon reviewing the accounts, Rodney Webre, a purchasing agent for Lakco, discovered that Orban was billing Lakco based upon the theoretical weight of the pipe rather than its actual weight.
Lakco was overcharged $730.88, approximately 8%, on the first invoice. A third invoice, dated June 2, 1982, purported to bill Lakco approximately $14,000.00, or 23%, over the correct price as based upon the actual weight of the 73 segments of pipe. This third invoice contained a notation that the billing would be adjusted after all of the pipe has been shipped.
Mr. Webre was informed that Orban billed based on the theoretical weight of the pipe. Later, after all of the pipe had been shipped and weight scale tickets were attained, Orban would compute the sale price based upon actual weight and credit Lakco's account. Mr. Webre was told Lakco would have to pay accordingly. Mr. Webre informed Orban that if Lakco was not billed as agreed upon, Lakco wished to return any pipe in its possession and settle the account. Orban eventually agreed to accept the pipe with freight pre-paid to Houston plus a 15% restocking charge. Lakco would not agree to this or pay for the pipe, and Orban filed this suit.
Orban contends that the trial court incorrectly found that there had been no agreement between the parties as to the price of the pipe, and thus no contract. Orban argues that there was only a misunderstanding regarding the method of billing, not the price. It points out that, based on bills of lading, the difference in price for the pipe received by Lakco is only $2,088.00, or approximately 2½%.
Three circumstances must concur for the perfection of a contract of sale: the thing sold, the price, and the consent. LSA-C.C. art. 2439. In a sale, it is essential that the price be fixed and determined between the parties, otherwise no sale exists. LSA-C.C. art. 2464; Patton's Heirs v. Moseley, 186 La. 1088, 173 So. 772 (1937); Mount Olive Bank v. Jackson Air Taxi, Inc., 356 So.2d 1090, (La.App. 2nd Cir.1978), writ denied, 359 So.2d 207 (La.1978). A contract of sale requires that both parties intend the same thing. Jacob Cohen & Son v. Friedman's Estate, 13 La.App. 154, 127 So. 412 (2nd Cir.1930).
The evidence establishes that Lakco intended to pay Orban $400 per net ton based on the actual weight of the pipe.
*1385 Orban, on the other hand, intended to require that Lakco pay $400 per net ton based on the theoretical weight of the pipe with a credit to be issued later. The trial court found that Orban indicated that there was no agreement as to price by its failure to properly invoice Lakco after Lakco protested the amount billed.
The record also reflects a disagreement between the parties concerning what quality pipe was intended to be sold and purchased, J-55 pipe or the lighter grade A-53, or both, and also the quantity of pipe. Orban contends that the sale to Lakco was a "cleanout" sale of all the pipe it had on hand for the reduced actual weight price. However, Lakco denies such was the agreement, maintaining that it only agreed to selectively order the heavier J-55 pipe as needed. Considering all the circumstances, we can find no clear error in the trial court's conclusion that there was no meeting of the minds and therefore no contract between the parties.
Orban next contends that the trial court, in effect, incorrectly rescinded the sale of the pipe and incorrectly ordered that Orban pick up the pipe in Lakco's possession, and credit Lakco's account. Orban claims this action by the trial court was incorrect because Lakco did not pray for such relief.
This issue is addressed by LSA-C.C.P. art. 862:
"Except as provided in article 1703, a final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings and the latter contain no prayer for general and equitable relief."
We also note that the trial court properly found that the pipe was never actually sold to Lakco, thus there cannot be any rescission. The relief granted was proper and equitable.
Orban finally contends that the trial court erred in assessing all costs against it in connection with the suit. A trial court is vested with great discretion in determining who is liable for costs of court. The court may assess costs against any party as it may consider equitable, even against the party prevailing on the merits. LSA-C. C.P. art. 1920; Johnson v. Bucyrus-Erie Co., 476 So.2d 1074 (La.App. 3rd Cir.1985).
A trial court's assessment of costs can be disturbed only upon a showing of abuse of discretion. Courtney v. Winn-Dixie Louisiana, Inc., 447 So.2d 504 (La. App. 5th Cir.1984), writ denied, 449 So.2d 1359 (La.1984); Purcell v. State Farm Ins. Co., 417 So.2d 16 (La.App. 4th Cir.1982). Although a part of the lower court judgment was rendered in favor of the plaintiff, we find that, considering the overall circumstances of the case, the trial court did not abuse its discretion.
Lakco answered Orban's appeal. It asserts that the trial court erred in denying its claims for costs incurred in the storage, handling and transportation of the 73 segments of pipe in its possession. Lakco cites LSA-C.C. art. 2497 in support of its claim:
LSA-C.C. art. 2497: "In all cases where the buyer has a right to recede from the contract, the seller is bound to make him restitution not only of the price, if already received, but also of the expenses occasioned by the contract."
LSA-C.C. art. 2497 supposes a valid contract of sale with an agreement as to the price, the thing, and the consent. In the instant case, there was no contract of sale perfected. LSA-C.C. art. 2497 must also be read in pari materia with LSA-C.C. arts. 2485, 2493 and 2496 which give the buyer the right to recede from a contract of sale in certain instances. The present case does not fall into any of those categories.
The trial court did not state its reasons for dismissing Lakco's reconventional demand for these expenses. The instant case however, involved a misunderstanding as to the price Lakco would be billed for the pipe and the quality and quantity of pipe envisioned by the alleged contract. Each party felt they were justified in their positions. Lakco refused to pay for the 73 *1386 segments of pipe in its possession or return them pursuant to Orban's terms. Orban refused to pick up the pipe at its own expense. Considering the aforementioned, we feel the trial court reached an equitable result in its judgment ordering Orban to pick up the pipe.
Lakco seeks attorney's fees for Orban's frivolous appeal. Damages for frivolous appeal are provided for by LSA-C. C.P. art. 2164. However, even where contentions on appeal are without merit, but raise legitimate issues, damages for frivolous appeal will not be allowed. Mauboules v. Broussard Rice Mills, 379 So.2d 1196 (La.App. 3rd Cir.1980), writ denied, 381 So.2d 1234 (La.1980). Although Orban's arguments are without merit, we find that legitimate questions were presented. Therefore, we deny Lakco's demand for attorney's fees.
Lakco finally asserts that it is entitled to judgment for the $730.88 it was overcharged on the first invoice paid by Lakco. It is not disputed that Lakco was overcharged this amount on the first invoice.

DECREE
For the reasons assigned, we amend the judgment of the trial court to award the defendant, Lakco Pipe & Supply, Inc., the amount of $730.88 on its reconventional demand, together with legal interest from date of judicial demand, until paid. In all other respects, the judgment of the trial court is affirmed. All costs of this appeal are assessed to the appellants.
AFFIRMED AS AMENDED.