NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

13-1395

JULIE O'DELL CARTER

VERSUS

JAMES D. CARTER

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 209,595
HONORABLE GEORGE C. METOYER JR, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

JIMMIE C. PETERS
JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Jimmie C. Peters, Billy Howard Ezell, and Phyllis M. Keaty, Judges.

AFFIRMED.

Eugene P. Cicardo, Jr.
Attorney at Law
P. O. Box 1128
Alexandria, LA 71309
(318) 445-2097
COUNSEL FOR PLAINTIFF/APPELLEE:
    Julie O'Dell Carter

**Brian K. Thompson**
**Attorney at Law**
**P. O. Box 13984**
**Alexandria, LA 71315**
**(318) 473-0052**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **James D. Carter**

**PETERS, J.**

In this spousal-support litigation, James D. Carter appeals aspects of the trial court judgment reducing, but continuing a periodic spousal-support award in favor of his former wife, Julie O'Dell Carter. His former wife answered the appeal, asserting that the trial court erred in reducing her spousal-support award. For the following reasons, we affirm the trial court judgment on the issues now before us.

## DISCUSSION OF THE RECORD

James D. Carter (James) and Julie O'Dell Carter (Julie) were married in Rapides Parish on July 5, 1982, and, of that marriage, two children were born: Lanna Renae Carter (born 11/2/84) and William Douglas Carter (born 9/6/91). Julie obtained a judgment of divorce based on the provisions of La.Civ.Code art. 103(2) on August 26, 2002, and four days later James and Julie entered into a consent judgment addressing the support obligation. In that August 30, 2002 consent judgment, Julie obtained sole custody of the two minor children and James was ordered to pay $950.00 per month in child support and $1,050.00 in spousal support.[1]

The appeal now before us arises from a January 17, 2013 rule to show cause filed by James, wherein he sought a judgment terminating his child and spousal support payments and awarding him a money judgment for amounts he claimed to have overpaid under the August 30, 2002 consent judgment. With regard to the spousal support obligation, James asserted that because the consent judgment was silent concerning whether that obligation was interim or final, it should have terminated 180 days after the date of the judgment of divorce. He further argued that he had paid child support past the date the two children born of the marriage reached the age of eighteen years and that, as a result, he was entitled to recover

---

[1] The consent judgment included other aspects of the litigants' relationship including a reassertion of the judgment of divorce. However, these other matters are not before us.

overpayments as well as all payments of spousal support paid after that obligation terminated. In the event the trial court construed the spousal support award as being final rather than interim, James argued in the alternative that the obligation should be terminated based on the fact that Julie no longer needed the support.

Julie responded to this rule to show cause by filing one of her own. In her rule to show cause, Julie sought to have James held in contempt of court for failing to pay some monthly payments required by the August 30, 2002 consent judgment and sought a money judgment for the amounts due under that judgment. In addition to seeking an attorney fee award for pursuing her rule, Julie also asserted that her spousal support obligation should be increased. In a separate pleading, Julie asserted peremptory exceptions of res judicata and no cause of action, as well as a motion to strike James' rule.

The conflicting issues proceeded to trial on May 13, 2013, and, upon the completion of the evidentiary phase, the trial court orally denied the request by either party to modify the consent-support order, denied Julie's rule for contempt of court, and found that both the child and spousal-support obligations were terminated retroactive to January 18, 2013. However, before a judgment could be signed, counsel for Julie requested that the trial court provide written reasons for its judgment.

This request resulted in a letter response from the trial court dated July 8, 2013, which reads in pertinent part:

> Upon preparing written reasons for the above captioned matter, this Court has discovered case law that supports the argument(s) asserted by Mrs. Julie Carter. Pursuant to La. C.C.P. art. 1971 (granting of new trial), this Court will grant a Motion for New Trial to all of the parties for **re-argument only.** Testimony will not be considered at this hearing. As noted in the official revision comments to La. C.C.P. art. 1971, the provisions in Article 1971, authorizing the court to direct a new trial on its own motion, is a codification of the

2

jurisprudence. It also follows the common law which gives the judge discretion in determining the causes for which a new trial will be granted. As such, this Court has determined that this matter shall be reargued on the **5ᵗʰ day of August, 2013 at 9:30 a.m.**

(Emphasis in the original)(footnotes omitted).

The actual argument occurred on July 22, 2013, and not August 5, 2013.[2] After hearing the argument of both litigants, the trial court changed the particulars of the judgment expressed in the May 13, 2013 hearing and issued a judgment wherein it reduced James' spousal support obligation to $500.00 per month effective March 1, 2013; found James in arrears for the payment of spousal support in the amount of $2,650.00 through July 31, 2013; and ordered that James pay the arrearage in monthly payments of $250.00 beginning on August 1, 2013. The trial court also granted Julie's exceptions of res judicata and no cause of action, as well as her motion to strike, but denied her attempt to have James held in contempt of court. The trial court also denied James' motion to have the spousal support terminated. Finally, the trial court ordered that the cost of the litigation be divided equally between the parties. The trial court executed a written judgment to this effect on August 26, 2013. Thereafter, James perfected this appeal, and Julie answered the appeal. Both the appeal and answer to the appeal address only that part of the judgment related to the permanent spousal support award and the assessment of cost.

In his appeal, James asserted the following assignments of error:

1. The Trial Court committed abuse of discretion when granting a Motion for New Trial prior to the signing of a Judgment in accordance with its ruling in Open Court on May 13, 2013.

2. The Trial Court committed manifest error in allowing the Plaintiff/Appellee to include the expenses of an adult child to be co-

_____

[2] The record contains nothing to explain how or why the matter was scheduled for an earlier date.

3

mingled with her expenses for purposes of making a claim for continued permanent spousal support.

3.    The Trial Court committed manifest error in its factual determinations based upon the fact that the Plaintiff/Appellee did not carry her burden of proof that she was in necessitous circumstances and in need of permanent periodic spousal support.

In her answer to the appeal, Julie asserted that the trial court erred in not increasing the spousal support award or, in the alternative, in not leaving it at the prior $1,050.00 per month level; and in not ordering James to pay all costs of the litigation.

**OPINION**

*James' First Assignment of Error*

In this assignment of error, James questions the actions of the trial court in ordering the August 5, 2013 hearing to reargue the issues before the court. Specifically, James argues that the trial court erred in granting a new trial when a judgment on the May 13, 2013 findings had not yet been signed. We agree that a motion for new trial was not the proper procedural vehicle for the trial court to order a rehearing, but find this error to be harmless.

Basically, what occurred in this matter is that after the trial court entered its oral reasons for judgment at the May 13, 2013 hearing, and before a judgment was signed, the trial court changed its mind concerning the disposition. As stated in *VaSalle v. Wal-Mart Stores, Inc.*, 01-462, p. 5 (La. 11/28/01), 801 So.2d 331, 334, "[i]t is well-settled that prior to final judgment a district court may, at its discretion and on its own motion, change the result of interlocutory rulings it finds to be erroneous." Additionally, it is equally well settled that "[w]ritten reasons for judgment are considered to be interlocutory rulings and do not carry the finality of a judgment." *Davis v. Farm Fresh Food Supplier*, 02-1401, p. 3 (La.App. 1 Cir.

4

3/28/03, 844 So.2d 352, 354. "Prior to final judgment, a trial court may, at its discretion, change the substance or the result of interlocutory rulings. If a disparity exists between the judgment and the written reasons for judgment, the final judgment is definitive." *Id.*

This court addressed a similar factual situation in *Bordelon v. Dauzat*, 389 So.2d 820 (La.App. 3 Cir. 1980). In *Bordelon*, the trial court had decided a previous matter involving the same litigants wherein Bordelon was the defendant and Dauzat was the plaintiff and initially provided the litigants with written reasons for judgment in favor of Bordelon. Before a final judgment could be signed, Dauzat filed a motion for new trial. On the day the motion was to be heard, the trial court did not receive any evidence on the motion. Instead, it rendered new written reasons for judgment changing the substance of the prior written reasons to the extent that the end result was a judgment in favor of Dauzat. After the trial court executed a written judgment in favor of Dauzat, Bordelon did not appeal. Instead, after some other procedural steps, he brought an action to annul the judgment on the grounds of ill practice by the trial court. This court rejected that action on appeal.

In *Bordelon*, this court recognized the fundamental difference between written reasons for judgment and the final judgment itself, as set forth in La.Code Civ.P. art. 1981. Additionally, this court noted that "where there are only written reasons and no separate signed judgment, there is no final judgment" and that "[a] trial judge may also sign a judgment based on written reasons which differ substantially from previously stated oral reasons."[3] *Id.* at 822. Additionally, this

---

[3] For further authority for the finding that a trial court may execute a judgment based on reasons substantially different from prior reasons rendered, *see Sanford v. Sandford*, 468 So.2d 844 (La.App. 1 Cir. 1985), and *Taylor v. Brandner*, 05-970 (La.App. 5 Cir. 4/25/06), 928 So.2d 751, *writ denied*, 06-1571 (La. 9/29/06), 937 So.2d 869.

court concluded that "[t]he fact that Dauzat erroneously filed an application for a new trial before a final judgment was rendered has no effect on our result. Procedures for motions for new trials and the granting of new trials do not apply prior to the signing of judgment." *Id.* In fact, "[a] motion for new trial filed before the signing of a final judgment is premature and without legal effect." *Clement v. Am. Motorists Ins. Co.*, 98-504, p.3 (La.App. 3 Cir. 2/3/99), 735 So.2d 670, 672, *writ denied*, 99-603 (La. 4/23/99), 742 So.2d 886.

Bordelon also argued to this court that the failure of the trial court to hold a hearing before changing its written reasons constituted an ill practice as that term is used in La.Code Civ.P. art. 2004. Citing *Sonnier v. Liberty Mutual Insurance Co.*, 258 La. 813, 248 So.2d 299 (1971), and *Borras v. Falgoust*, 285 So.2d 583 (La.App. 4 Cir. 1973), writ denied 289 So.2d 161 (LA. 1974), cert. denied, 419 U.S. 854, 95 So.Ct. 97 (1974), as authority, this court pointed out that even had the motion for new trial been properly before the trial court, "no absolute right to a hearing exists." *Bordelon*, 389 So.2d at 823.

Unlike the jurisprudence cited above, the reasons at issue in this matter are oral rather than written. However, we find that this is a distinction without a difference. The reasons expressed by the trial court are of an interlocutory nature whether oral or written, and the substance of those reasons can be changed at any time before a final judgment is signed. Additionally, the trial court could have changed the substance of the reasons for judgment prior to executing a judgment without giving any party to the litigation notice. The fact that it chose to allow a second argument on the issues and erroneously couched the re-argument in terms of a motion for new trial does not affect the outcome of the reconsideration. In fact,

6

it provided James with a benefit not otherwise required. We find no merit in this assignment of error.

### *Assignments of Error from both Litigants on the Issue of the Award*

James' remaining two assignments of error, as well as the first two of Julie's assignments, all relate to the spousal-support judgment. In his second assignment of error, James asserts that the trial court erred in allowing Julie to include expenses related to the support of their major son in her claim for a continued award of spousal support. In his final assignment of error, he asserts that the trial court erred in factually determining that Julie had carried the burden of establishing that she was in such necessitous circumstances that she needed continuation of the periodic spousal-support order. Julie, on the other hand, asserts that the trial court erred in not increasing her spousal-support award or, in the alternative, that the trial court erred in reducing it.

At the May 13, 2013 hearing, both litigants testified extensively on direct and cross-examination concerning the particulars of their financial situation. Each had the normal expenses that one might expect in maintaining themselves, and, as is usually the case in these matters, there is not enough income between them to meet all of the obligations they claim to have.

Julie's testimony at the May 13, 2013 hearing established that at the time of the divorce, she was working part time for a Rapides Parish law firm and grossed $160.00 per week, or approximately $670.00 per month.[4] Her affidavit of income and expenses filed in conjunction with her testimony established that on May 13, 2013, she held the position of school cafeteria supervisor with the Rapides Parish

---

[4] She testified that she worked four hours per day, five days per week, and was paid $8.00 per hour. Assuming that she worked the majority of the weeks in the year, this would equate to approximately $670.00 per month gross income.

7

School Board, earning a gross amount of $1,731.57 per month and, after deductions, a net amount of $1,106.50 after $625.17 in deductions.[5] The affidavit then lists $4,216.04 in monthly expenses. Thus, the affidavit suggests that she requires an additional $3,109.54 in spousal support just to meet her monthly expenses.

Part of the listed expenses related to the fact that William Douglas (Douglas), their twenty-one-year-old unemployed son, was living with her. Julie testified that the listed expenses included all of the monthly living expenses for both her and her son and that in addition to paying for all of the household expenses, she was also paying for Douglas' food, automobile expenses, cellular telephone, medical bills, and medical insurance coverage. Additionally, she was repaying funds she had borrowed for her educational expenses at Louisiana State University at Alexandria at the rate of $445.00 per month.[6]

Julie also acknowledged in her testimony that in addition to spousal-support payments, James had previously provided her with $4,000.00 for the purchase of a new vehicle, $6,000.00 for her son's dental care, and $2,500.00 to cover one-half of the cost of a roof repair, as well as undisclosed amounts that she claims were to cover the cost of books for their son. She also acknowledged that James provided her approximately $3,500.00 around Christmas of each year from 2004 to 2009, but that amount included the monthly spousal-support obligation.

James testified that at the time of the May 2013 hearing, he was employed by Nabors Offshore and had worked for that company since August of 2006. At

---

[5] The deductions included federal income tax ($49.25); Medicare tax ($20.93); state tax ($29.20); health insurance premiums ($288.17); two disability policies ($42.57); retirement ($138.53); life insurance ($53.50); and ASFSA dues ($3.02).

[6] The student loans began to add up when she began her studies in 2009, and an exhibit relative to this obligation reflected a principal balance of $48,955.00 with the first loan being incurred in January of 2009, and the last loan incurred in February of 2013.

the time of the hearing, he was grossing $8,107.00 per month, with a net take home pay of $5,403.06. James' income and expense affidavit did not itemize his deductions from his salary, but itemized expenses totaling $3,596.06. However, he did list as one of his expenses $165.00 per month for health insurance covering Douglas. He did so because Julie had told him that she could no longer afford that expense, and she never told him that she was still carrying him on her health insurance. Additionally, much of his remaining expenses related to his travel to and from work offshore.

According to James, he stopped making spousal-support payments in November of 2012, because he and Julie had an agreement that he would continue to help her financially until she completed school, and it was that month in which she completed her education. Additionally, James asserted that he paid for a number of other things over and above the spousal-support obligation and that he did so to assist Julie when she called upon him.

One item not listed on his income and expense affidavit, but testified to by James, involved approximately $100,000.00 in back taxes owed the United States government, with approximately $60,000.00 of that amount originating before 2002. He testified that while he had not been paying on the debt, he had retained the services of a consulting firm for the purpose of setting up a repayment plan. According to James, the repayment plan calls for him to begin making monthly payments beginning in June of 2013, at $500.00 and gradually increasing thereafter to $2,100.00 per month in October of 2013.

Upon completion of the evidence on May 13, 2013, the trial court issued oral reasons for judgment generally rejecting the relief requested by both litigants and terminating the previous consent judgment relative to spousal support. However,

9

as previously stated, after the July 22, 2013 argument, the trial court rendered judgment reinstating periodic spousal support, but reducing the monthly payment from $1,050.00 to $500.00 per month.[7]  Neither litigant is satisfied with that judgment.

Periodic spousal support after a judgment, whether it be classified as interim or final, is provided for in La.Civ.Code art. 111, where the former spouse seeking such an award is free from fault.  It is not disputed that Julie was free from fault in causing the divorce and, therefore, can pursue a judgment of periodic spousal support.   The factors to be considered in setting the amount of periodic spousal support are found in La.Civ.Code art. 112, which provides:

> A.   When a spouse has not been at fault and is in need of support, based on the needs of that party and the ability of the other party to pay, that spouse may be awarded final periodic support in accordance with Paragraph B of this Article.
>
> B.  The court shall consider all relevant factors in determining the amount and duration of final support.  Those factors may include:
>
> (1)   The income and means of the parties, including the liquidity of such means.
>
> (2)  The financial obligations of the parties.
>
> (3)  The earning capacity of the parties.
>
> (4)   The effect of custody of children upon a party's earning capacity.
>
> (5)  The time necessary for the claimant to acquire appropriate education, training, or employment.
>
> (6)  The health and age of the parties.
>
> (7)  The duration of the marriage.
>
> (8)  The tax consequences to either or both parties.

---

[7] As previously stated, the judgment addressed a number of other issues, but none of those issues are before us in this appeal.

C.  The sum awarded under this Article shall not exceed one-third of the obligor's net income.

Louisiana Civil Code Article 114 provides in pertinent part that "[a]n award of periodic support may be modified if the circumstances of either party materially change and shall be terminated if it has become unnecessary."  Additionally, as recognized in *Mizell v. Mizell*, 40,601, p. 4 (La.App. 2 Cir. 1/25/06), 920 So.2d 927, 930, and the cases cited therein, "under Louisiana jurisprudence, the support of a major child has no bearing in determining a spouse's need for spousal support."  When considering whether a change of circumstances has occurred sufficient to warrant modification of a prior periodic spousal-support award, we must give great deference to the decision of the trial court, and we will not distrust that finding or a resulting award absent a finding of abuse of discretion.  *Vincent v. Vincent*, 11-1822 (La.App. 4 Cir. 5/30/12), 95 So.3d 1152.

The record before us does not contain a transcript of the August 5, 2013 hearing, nor does it contain any reasons for the trial court's decision for changing the prior interlocutory judgment.  However, our review of the evidence presented at the May 13, 2013 hearing establishes that a material change of circumstances did occur in that the amount of money now available to both litigants versus their income at the time of the original consent judgment is significantly different.  Additionally, there is no evidence to suggest that the trial court used Douglas' expenses in reaching the decision.  Giving great deference to the trial court's ruling, we find no abuse of discretion in its ruling on the periodic spousal-support issue.  Thus, we find no merit in any of these assignments of error.

### *Julie's Assignment of Error Concerning Cost of Court*

The trial court divided the cost of court equally between James and Julie, and Julie asserts on appeal that this is error. She asks us to assign all of the cost of court to James.

> A trial court is vested with great discretion in determining who is liable for costs of court. The trial court may assess costs against any party in the proportion it deems equitable, even against the party prevailing on the merits. LSA-C.C.P. art. 1920; *D.B. Orban Co. v. Lakco Pipe*, 496 So.2d 1382 (La.App. 3d Cir.1986). A trial court's assessment of costs can be disturbed only upon a showing of an abuse of discretion. *D.B. Orban, supra; Courtney v. Winn-Dixie Louisiana, Inc.*, 447 So.2d 504 (La.App. 5th Cir.1984), *writ denied*, 449 So.2d 1359 (La.1984).

*Greene v. Greene*, 94-79, p. 4 (La.App. 3 Cir. 10/5/94), 643 So.2d 891, 894.

We find no merit in this assignment of error.

### DISPOSITION

For the foregoing reasons, we affirm the trial court judgment modifying the periodic spousal-support obligation due Julie O'Dell Carter from James D. Carter in all respects. We assess the cost of this appeal equally between Julie O'Dell Carter and James D. Carter.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Uniform Rules—Courts of Appeal, Rule 2-16.3.